IN THE MATTER OF D.C.

No. COA12-893

Filed 5 February 2013

1. **Termination of Parental Rights—authority to file petition—guardianship—permanent planning review**

    The trial court did not err in a termination of parental rights case by concluding petitioners had authority to file a petition to terminate respondents' parental rights after the trial court ordered guardianship as the permanent plan. The guardians' petition seeking to terminate respondent's parental rights was proper, and respondent's contention that another permanency planning review hearing should have been held prior to the filing of the termination petition had no merit.

2. **Termination of Parental Rights—grounds—failure to make reasonable progress—sufficiency of findings of fact**

    The trial court did not err in a termination of parental rights case by concluding that respondent mother's failure to make reasonable progress was supported by the findings of fact. Because the trial court did not err in terminating respondent's parental

**IN RE D.C.**

[225 N.C. App. 327 (2013)]

rights on at least one ground for termination pursuant to N.C.G.S. § 7B-1111, the Court of Appeals did not need to address respondent's arguments regarding the grounds of neglect or willful abandonment.

Appeal by respondent from order entered 1 May 2012 by Judge Jeffrey E. Noecker in District Court, New Hanover County. Heard in the Court of Appeals 3 January 2013.

*No brief filed for petitioner-appellees.*

*Parker Poe Adams & Bernstein LLP, by William L. Esser IV, for guardian ad litem.*

*Jeffrey L. Miller for respondent-appellant mother.*

STROUD, Judge.

Respondent mother appeals from the trial court's 1 May 2012 order terminating her parental rights in her minor child.[1] We affirm.

On 17 November 2004, the New Hanover County Department of Social Services ("DSS") filed a juvenile petition alleging Don,[2] then three years old, to be neglected and dependent due to severe injuries he sustained from a dog attack in the home. DSS obtained non-secure custody, and the child was placed in foster care. The minor child was adjudicated neglected on 13 January 2005, and the allegation of dependency was dismissed. On 14 July 2005, the permanent plan was changed from reunification to adoption and DSS was authorized to pursue termination of parental rights.

After another permanency planning review hearing held on 29 November 2007, the trial court changed the permanent plan for Don to guardianship and granted guardianship to the child's foster parents. Respondent appealed to this Court, which affirmed the order in an opinion filed on 15 July 2008. *In re D.C.*, 191 N.C. App. 399, 663 S.E.2d 13 (2008) (unpublished).

On 27 May 2011, respondent filed a *pro se* motion for review. Due to the passage of time, new counsel and a guardian *ad litem* were appointed to represent respondent and a guardian *ad litem* was

---

1. The order also terminated the rights of the juvenile's father, who has not filed an appeal.

2. The trial court specifically found Ms. Sargent's testimony credible and relied on the information she provided.

appointed for the minor child. On 29 August 2011, respondent's attorney filed a new motion for review. Respondent's *pro se* motion was dismissed on 23 December 2011.

On 19 October 2011, Don's guardians filed a petition to terminate respondent's parental rights. The petition alleged respondent parents neglected and/or abused the minor child, willfully left the minor child in placement outside the home for more than twelve months without making reasonable progress to correct the conditions that led to the removal of the child, are incapable of providing for the proper care and supervision of the child, failed to pay support for the child, and willfully abandoned the child.

The termination petition and the August motion for review were consolidated for a hearing held on 9 January and 20 February 2012. The trial court entered its order on 1 May 2012 terminating respondent's parental rights to the minor child based on neglect, failure to make reasonable progress, and willful abandonment. The court also denied respondent's motion for review. Respondent appeals.

"The standard for review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." *In re Clark*, 72 N.C. App. 118, 124, 323 S.E.2d 754, 758 (1984).

Respondent challenges the findings of fact relating to each of the three grounds contained in the order as being unsupported by the evidence and argues that the findings of fact do not support the trial court's conclusions. Further, respondent argues petitioners had no authority to file a petition to terminate her parental rights after the trial court ordered guardianship as the permanent plan. We address the latter issue first.

[1] Respondent notes that in the 14 December 2007 order establishing guardianship as the permanent plan for the minor child, the trial court did not close the juvenile case or relieve DSS of responsibility for reunification but instead directed DSS to participate in helping respondent reestablish a relationship with the minor child. Respondent argues that the guardians were not parties to the juvenile case, nor did they seek to intervene as parties at any point in the case. She asserts that a hearing should have been held in order to allow her to contest a change in the permanent plan from guardianship to termination of her rights. She argues that without an order from the trial court changing the permanent plan and without making DSS a party,

IN RE D.C.

[225 N.C. App. 327 (2013)]

"the guardians unilaterally commenced a private action for termination by filing their petition in October 2011." We agree that this is what the guardians did; that action, however, is specifically authorized by the Juvenile Code.

N.C. Gen. Stat. § 7B-1103, which governs "Who may file a petition or motion" to terminate a parent's rights, permits "[a]ny person who has been judicially appointed as the guardian of the person of the juvenile" to file such a petition or motion. N.C. Gen. Stat. § 7B-1103(a)(2) (2011). Despite respondent's arguments, the Juvenile Code places no preliminary requirements on guardians before they may file a petition or motion to terminate a parent's rights. Therefore, the guardians' petition seeking to terminate respondent's parental rights was proper, and respondent's contention that another permanent planning review hearing should have been held prior to the filing of the termination petition has no merit.

[2] Respondent contends the grounds of neglect and failure to make reasonable progress are not supported by the findings of fact or the evidence.

To terminate a parent's rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), it must be shown by clear and convincing evidence that the parent (1) willfully left the child in placement outside the home for more than twelve months, and (2) as of the time of the termination hearing, failed to make reasonable progress under the circumstances to correct the conditions that led to the child's removal. *In re O.C.*, 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396, *disc. review denied*, 360 N.C. 64, 623 S.E.2d 587 (2005). The trial court's order must contain adequate findings of fact as to whether the parent acted willfully and as to whether the parent made reasonable progress under the circumstances. *In re C.C.*, 173 N.C. App. 375, 384, 618 S.E.2d 813, 819 (2005). We have stated that "[w]illfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort." *In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175, (citation omitted), *disc. review denied*, 354 N.C. 218, 554 S.E.2d 341 (2001). "A finding of willfulness is not precluded even if the respondent has made some efforts to regain custody of the child[]." *In re Nolen*, 117 N.C. App. 693, 699, 453 S.E.2d 220, 224 (1995).

Respondent first argues that the condition which led to Don's removal from the home, a dangerous environment due to the dog attack, no longer exists. She notes that the dog was destroyed, there

was no evidence of another dog in the home, and that respondent's home was reported to be "clean and tidy" by DSS in 2007. At the time of the termination hearing in 2012, she had maintained custody of one of her other children for three years and she had regular extended visitation with her other two minor children. She argues that because her home was deemed appropriate for her to have custody of one of her children and she had made progress in other aspects of her life, the trial court had no basis for determining that she willfully left the minor child in foster care. We do not agree.

Police officers who responded to the attack on Don killed the dog that night, even before Don was adjudicated neglected. Don was removed from respondent's custody because of the injurious environment in respondent's home and the lack of proper care and supervision therein; the dog attack was just one of the manifestations of the injurious environment. Don was removed not merely because of the attack, but because respondent had the poor judgment to leave her young child with a dangerous animal. Ms. Sargent testified that respondent still does not understand the nature of Don's injuries or the trauma he experienced.[3] This lack of understanding of the seriousness of Don's injuries and post-traumatic stress caused by the dog attack reflects the same underlying condition that led to Don's removal—respondent's failure to understand what constitutes a danger to Don's health, safety, and welfare. Evidence of respondent's lack of reasonable progress toward understanding the significance of Don's injuries, and the trauma he suffered as a result, therefore, constitutes evidence of a failure to correct the injurious environment that led to Don's removal. The reunification plan was meant in part to educate respondent about these issues and to enable her to reestablish her relationship with Don.

The court found that the child's therapist, Ms. Sargent, was charged with establishing a plan for respondent to work on reunification with the minor child. The plan included having an individual meeting between Ms. Sargent and respondent before any visits with the child could take place. Ms. Sargent communicated multiple times with respondent regarding the need to set up such an appointment, but respondent did not do so until 19 January 2012, after the first hearing in the termination proceedings and over four years after the last order entered in the case.

---

3. The trial court specifically found Ms. Sargent's testimony credible and relied on the information she provided.

**IN RE D.C.**

[225 N.C. App. 327 (2013)]

The court found as fact that the child had been in the care of the guardians since December 2004, and that the last visit between the child and respondent took place in 2005. The trial court also found that respondent did not believe her child was scared of her or of going to live with her and did not believe the letters she received from the child in which he stated his desire to be adopted by his foster parents were actually written by him.

Based upon our review of the transcript, Ms. Sargent's testimony supports the findings that respondent was told what she had to do to progress toward visits with the minor child, that Ms. Sargent talked to respondent about needing to set up an appointment on multiple occasions, and that respondent failed to do so. Despite respondent's contention that a plan was never put in writing, Ms. Sargent's testimony, determined by the trial judge to be credible, clearly showed that respondent knew what she had to do and she failed to do it. Although respondent testified that she did not attempt to make an appointment because Ms. Sargent told her the child wasn't ready for visitation, respondent was supposed to meet with Ms. Sargent separately first as a preliminary step toward visitation, and she did not take that step in the four years after guardianship became the permanent plan. Moreover, the December 2007 order establishing guardianship of the child specifically stated that any party could go back to court by filing a motion. Respondent waited over three and a half years before seeking help with visitation by filing a motion for review in the trial court.

The findings of fact that respondent did not believe the letters sent to her by the minor child were actually written by him, or that the minor child was scared of her and of coming to live with her are supported by respondent's testimony as well as Ms. Sargent's testimony. Respondent's inability to acknowledge and comprehend the severity of the minor child's trauma indicates a lack of progress despite respondent's years of counseling with her own therapist.

Given these circumstances, we conclude that the trial court's findings of fact were supported by the evidence and those findings supported the court's determination under N.C. Gen. Stat. § 7B-1111(a)(2) that respondent willfully left Don in placement outside the home for more than 12 months and failed to make reasonable progress to correct the conditions that led to Don's removal. Therefore, it was not error for the trial court to terminate respondent's parental rights on this ground.

**IN RE E.J.**

[225 N.C. App. 333 (2013)]

Because the trial court did not err in terminating respondent's parental rights on at least one ground for termination pursuant to N.C. Gen. Stat. § 7B-1111, we need not address respondent's arguments regarding the grounds of neglect or willful abandonment. *See In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003) (a finding of one statutory ground is sufficient to support the termination of parental rights). The order of the trial court is affirmed.

AFFIRMED.

Chief Judge MARTIN and Judge ERVIN concur.