ELMORE, Judge.
 

 *570
 
 Respondent-mother appeals from the trial court's order terminating her parental rights to D.M.O. ("David")
 
 [1]
 
 on the ground of abandonment. We vacate and remand.
 

 I. Background
 

 Respondent-mother and petitioner-father are the biological parents of David. The parties resided together with David as a family unit from the date of his birth in March 2007 until the parties separated in July 2010 due to escalating conflict between the parties that resulted in respondent-mother committing acts of domestic violence against petitioner-father. After the parties separated, petitioner-father took physical custody of David and filed a custody action in Durham County.
 

 After a hearing, the trial court entered a permanent custody order on 25 January 2011, which granted petitioner-father legal and physical
 
 *571
 
 custody of David and respondent-mother unsupervised visitation on Tuesdays, Thursdays, and Saturdays. Respondent-mother and petitioner-father made agreements over the years to change the times of visitation, based on mutual convenience and changes in David's school and extracurricular activity schedules.
 

 For several years, respondent-mother has struggled with drug addiction and substance abuse and has been incarcerated multiple times at multiple jails and prisons for issues related to drugs and other crimes. Relevant to this appeal, she was incarcerated at Wake County jail from 10 December 2014 to 7 January 2015. She was incarcerated at Durham County jail, participating in a drug treatment program, from 23 January to 2 March 2015. She returned to Wake County jail on 9 March and then was transferred in late July to a prison within the North Carolina Department of Adult Correction, where she remained until the termination hearing.
 

 On 28 May 2015, petitioner-father filed a petition to terminate respondent-mother's parental rights to David alleging,
 
 inter alia
 
 , that she "willfully abandoned [David] for at least six (6) consecutive months immediately preceding the filing of the petition," pursuant to N.C. Gen. Stat. § 7B-1111(a)(7). From jail, respondent-mother handwrote a letter to the clerk of court stating that she did not want her parental rights terminated, that she had been incarcerated for most of the year, and that she wanted an attorney. Respondent-mother also stated that "she ha[d] contacted [petitioner-father] many, many times[, and she] had either gotten [n]o response or [petitioner-father responding] 'No' & 'Busy' on multiple occasions[.]" On 30 June 2015, respondent-mother filed a formal response denying the allegations that she willfully abandoned David. At some point in July 2015, respondent-mother was transferred from Wake County jail to Eastern Correctional Institution in Maury, North Carolina. On 26 August 2015, a guardian ad litem ("GAL") was appointed for David.
 

 On 29 January 2016, the district court held a termination hearing. On 16 March 2016, the trial court entered an order concluding that grounds existed to terminate respondent-mother's parental rights based on willful abandonment pursuant to N.C. Gen. Stat. § 7B-1111(a)(7) and that termination was in David's best interests. Respondent-mother appeals.
 

 II. Analysis
 

 Respondent-mother argues the trial court erred by concluding she willfully abandoned David pursuant to N.C. Gen. Stat. § 7B-1111(a)(7) because there was insufficient evidence and findings of her "willfulness." In addition, respondent-mother contends the trial court erred by not
 
 *572
 
 requiring David's GAL to perform his statutory duties of "offer[ing]
 
 *861
 
 evidence and examin[ing] witnesses at adjudication," as well as "explor[ing] options with the court at the dispositional hearing."
 
 See
 
 N.C. Gen. Stat. § 7B-601(a) (2015).
 

 A. Standard of Review
 

 " 'This Court reviews a trial court's conclusion that grounds exist to terminate parental rights to determine whether clear, cogent, and convincing evidence exists to support the court's findings of fact, and whether the findings of fact support the court's conclusions of law.' "
 
 In re C.J.H.
 
 , --- N.C. App. ----, ----,
 
 772 S.E.2d 82
 
 , 88 (2015) (quoting
 
 In re Huff,
 

 140 N.C.App. 288
 
 , 291,
 
 536 S.E.2d 838
 
 , 840 (2000) ). "If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary."
 

 Id.
 

 (citation omitted). We review
 
 de novo
 
 whether a trial court's findings support its conclusions.
 
 See
 

 In re S.N.
 
 ,
 
 194 N.C.App. 142
 
 , 146,
 
 669 S.E.2d 55
 
 , 59 (2008) (citation omitted),
 
 aff'd per curiam,
 

 363 N.C. 368
 
 ,
 
 677 S.E.2d 455
 
 (2009).
 

 However, meaningful appellate review requires that trial courts make "
 
 specific findings
 
 of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached."
 
 Quick v. Quick
 
 ,
 
 305 N.C. 446
 
 , 452,
 
 290 S.E.2d 653
 
 , 658 (1982). "Ultimate facts are the final resulting effect reached by processes of logical reasoning from the evidentiary facts."
 
 In re Anderson
 
 ,
 
 151 N.C.App. 94
 
 , 97,
 
 564 S.E.2d 599
 
 , 602 (2002) (citation and quotation marks omitted). The court's order must include "specific ultimate facts to support the judgment, and the facts found must be sufficient for the appellate court to determine that the judgment is adequately supported by competent evidence."
 
 Montgomery v. Montgomery
 
 ,
 
 32 N.C.App. 154
 
 , 156-57,
 
 231 S.E.2d 26
 
 , 28 (1977) (citations omitted).
 

 B. Willful Abandonment
 

 Respondent-mother asserts "the trial court erred in concluding that [her] parental rights should be terminated solely on the basis of N.C. Gen. Stat. § 7B-1111(a)(7) when there were no findings of willfulness."
 

 N.C. Gen. Stat. § 7B-1111(a)(7) (2015) (emphasis added) establishes grounds for terminating parental rights when "[t]he parent has
 
 willfully
 
 abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion." In the context of abandonment, "[w]illfulness is 'more than an intention to do a thing; there must
 
 *573
 
 also be purpose and deliberation.' "
 
 In re S.R.G.
 
 ,
 
 195 N.C.App. 79
 
 , 84,
 
 671 S.E.2d 47
 
 , 51 (2009) (quoting
 
 In re Searle,
 

 82 N.C.App. 273
 
 , 275,
 
 346 S.E.2d 511
 
 , 514 (1986) ). Because "[w]ilful[l] intent is an integral part of abandonment and ... is a question of fact to be determined from the evidence[,]"
 
 Pratt v. Bishop,
 

 257 N.C. 486
 
 , 501,
 
 126 S.E.2d 597
 
 , 608 (1962), a trial court must make adequate evidentiary findings to support its ultimate finding of willful intent.
 
 See
 

 In
 

 re T.M.H.
 
 ,
 
 186 N.C.App. 451
 
 , 452,
 
 652 S.E.2d 1
 
 , 1 (2007) (remanding for further findings "[w]here the trial court failed to make findings of fact and conclusions of law concerning the willfulness of respondent's conduct"). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child."
 
 In re Young
 
 ,
 
 346 N.C. 244
 
 , 251,
 
 485 S.E.2d 612
 
 , 617 (1997) (citation and quotation marks omitted).
 

 Although "the trial court may consider [a parent's] conduct outside [the six-month] window in evaluating [a parent's] credibility and intentions[,]"
 
 C.J.H.
 
 , --- N.C. App. at ----,
 
 772 S.E.2d at 91
 
 (citations omitted), the "determinative" period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition.
 
 Young
 
 ,
 
 346 N.C. at 251
 
 ,
 
 485 S.E.2d at 617
 
 . Thus, termination based on abandonment requires findings that "show more than a failure of the parent to live up to [his or her] obligations as a parent in an appropriate fashion."
 
 In re S.R.G.,
 

 195 N.C.App. at 87
 
 ,
 
 671 S.E.2d at 53
 
 . The findings must "demonstrate that [a parent] had a 'purposeful, deliberative and manifest willful determination to forego all parental duties and relinquish all parental claims' to [the child]."
 

 *862
 

 In re S.Z.H.
 
 , --- N.C. App. ----, ----,
 
 785 S.E.2d 341
 
 , 347 (2016) (quoting
 
 S.R.G.,
 

 195 N.C.App. at 87
 
 ,
 
 671 S.E.2d at
 
 53 ) (reversing a termination order based on abandonment for insufficient findings).
 

 Here, respondent-mother's behavior between 28 November 2014 and 28 May 2015 is determinative. The trial court's relevant findings as to respondent-mother's conduct during this period follow:
 

 A. From 2012 to early 2015, when [respondent-mother] was not incarcerated, she showed up late for visits and over time the visits decreased in frequency. [Respondent-mother] was in custody from December 10, 2014 through January 7, 2015, and January 23, 2015 through March 2, 2015, and March 9, 2015 through present.
 

 B. [David] participates in baseball and basketball. [Petitioner-father] notified [respondent-mother] of [David's] game schedule. [Respondent-mother] attended
 
 *574
 
 a few of the games. She has not attended any games over the last year.
 

 C. To the knowledge of [petitioner-father] and his wife, [respondent-mother] last saw [David] in March or April of 2014. [Respondent-mother] has a history of asking to see [David] and now [sic] showing up or calling to cancel the visitation.
 

 ....
 

 G. [Respondent-mother] did not visit with [David] or contact [David] during November 2014 or December 2014.
 

 ....
 

 I. On or about January 7, 2015, [respondent-mother] texted [petitioner-father] telling [petitioner-father] that she loves and misses [David]. [Respondent-mother] did not ask to speak to [David] or ask that a message be conveyed to [David]. [Respondent-mother] did not exercise Court ordered visits with [David] during January 2015.
 

 J. [Respondent-mother] failed to exercise Court ordered visitation during February 2015.
 

 K. [Respondent-mother] failed to exercise Court ordered visitation during March 2015.
 

 L. [Respondent-mother] failed to exercise Court ordered visitation during April 2015.
 

 M. [Respondent-mother] failed to exercise Court ordered visitation during May 2015.
 

 N. [Respondent-mother] has called in the past and requested to speak to [David]. Her request was honored (see [petitioner-father's] Exhibit 2).
 

 O. [Respondent-mother] has requested visits in the past and those visits were allowed by [petitioner-father]. (see [petitioner-father's] Exhibit 2).
 

 P. [Respondent-mother's] sister has requested visits with [David] and phone calls. Requests were granted (see [petitioner-father's] Exhibit 2).
 

 Q. [Respondent-mother] testified that she had made attempts to call and sent letters but did not keep track of
 
 *575
 
 when she did so because she did not think she would need them. Her recollection was that she sent a letter in April and May of 2015. Furthermore, she also sent a small number of texts during times she was not in custody.
 

 Respondent-mother argues these findings are inadequate to establish that she willfully abandoned David. Specifically, she contends that despite findings that she was incarcerated for all but 33 of the determinative 180 days preceding the filing of the termination petition, the court found that she failed to exercise visitation and attempted to make contacts during this period, yet failed to make "findings that any of [respondent-mother's] conduct was willful or manifested a willful intent to abandon her son." We agree.
 

 "[I]ncarceration, standing alone, neither precludes nor requires a finding of willfulness [on the issue of abandonment,]"
 
 In re McLemore
 
 ,
 
 139 N.C.App. 426
 
 , 431,
 
 533 S.E.2d 508
 
 , 511 (2000) (citation omitted), and "[d]espite incarceration, a parent failing to have any contact can be found to have willfully abandoned the child[.]"
 
 In re D.J.D.
 
 ,
 
 171 N.C.App. 230
 
 , 241,
 
 615 S.E.2d 26
 
 , 33-34 (2005) (citation omitted). However, the circumstances attendant to a parent's incarceration are relevant when determining whether a parent willfully abandoned his or her child, and this Court has repeatedly acknowledged
 
 *863
 
 that the opportunities of an incarcerated parent to show affection for and associate with a child are limited.
 
 See, e.g.
 
 ,
 
 In re B.S.O.
 
 ,
 
 234 N.C.App. 706
 
 , 711,
 
 760 S.E.2d 59
 
 , 64 (2014) ("[A] parent's opportunities to care for or associate with a child while incarcerated are different than those of a parent who is not incarcerated. The opportunities of an incarcerated parent are even more limited than those of a deported parent....");
 
 In re Shermer
 
 ,
 
 156 N.C.App. 281
 
 , 290,
 
 576 S.E.2d 403
 
 , 409 (2003) ("
 
 Because respondent was incarcerated
 
 , there was little involvement he could have beyond what he did-write letters to [his children] and inform DSS that he did not want his rights terminated." (emphasis added));
 
 In re Adoption of Maynor
 
 ,
 
 38 N.C.App. 724
 
 , 726-27,
 
 248 S.E.2d 875
 
 , 877 (1978) ("[T]he fact that the respondent was unable to locate his son and was unable to make support payments
 
 as a result of his incarceration
 
 , is inconsistent with a willful intent to abandon his son." (emphasis added));
 
 see also
 

 D.J.D.
 
 ,
 
 171 N.C.App. at 240
 
 ,
 
 615 S.E.2d at 33
 
 (affirming termination of parental rights based in part upon abandonment, "acknowledg[ing] that incarceration limited [the parent's] ability to show affection");
 
 In re J.L.K.
 
 ,
 
 165 N.C.App. 311
 
 , 318-19,
 
 598 S.E.2d 387
 
 , 392 (2004) (upholding a termination order based upon neglect, stating that "[a]lthough his options for showing affection [while incarcerated] are greatly limited,
 
 *576
 
 the respondent will not be excused from showing interest in his child's welfare by whatever means available"). Additionally, the effects of a parent's addiction may be relevant when considering evidence related to willfulness on the issue of abandonment.
 
 See, e.g.
 
 ,
 
 S.R.G.
 
 ,
 
 195 N.C.App. at 86
 
 ,
 
 671 S.E.2d at 52
 
 (analyzing findings relating to a parent's failure to comply with her case plan and continued substance abuse, explaining that "[t]hese are failings that do not inherently suggest a willful intent to abandon, as they are subject to other explanations-uncontrolled addiction, for example" (citations omitted));
 
 Bost v. Van Nortwick
 
 ,
 
 117 N.C.App. 1
 
 , 18,
 
 449 S.E.2d 911
 
 , 921 (1994) ("Our review of respondent's inability to pay child support
 
 due to his dependency on alcohol
 
 and related financial problems does not support a finding of willful abandonment.").
 

 Furthermore, our cases have consistently recognized that the finding of willful intent for abandonment under N.C. Gen. Stat. § 7B-1111(a)(7) is something greater than that of the willful intent for leaving a child in foster care without making reasonable progress under N.C. Gen. Stat. § 7B-1111(a)(2).
 
 See, e.g.
 
 ,
 
 In re J.L.H.
 
 ,
 
 224 N.C.App. 52
 
 , 54,
 
 741 S.E.2d 333
 
 , 335 (2012) ("The willful leaving of the juvenile in foster care is 'something less than willful abandonment' and 'does not require a showing of fault by the parent.' (citation omitted))";
 
 S.N.
 
 ,
 
 194 N.C.App. at 146
 
 ,
 
 669 S.E.2d at 59
 
 . Under N.C. Gen. Stat. § 7B-1111(a)(2), "[w]illfulness is established when [a parent] had the
 
 ability
 
 to show reasonable progress, but was unwilling to make the effort."
 
 In re D.C.
 
 ,
 
 225 N.C.App. 327
 
 , 330,
 
 737 S.E.2d 182
 
 , 185 (2013) (emphasis added) (citation and quotation marks omitted). In determining willfulness in this context, "[i]t is significant that the tasks assigned ... were within [a parent's] ability to achieve, and did not require financial or social resources beyond [a parent's] means."
 
 In re McMillon
 
 ,
 
 143 N.C.App. 402
 
 , 410,
 
 546 S.E.2d 169
 
 , 175 (2001) ;
 
 see also
 

 In re Matherly
 
 ,
 
 149 N.C.App. 452
 
 , 455,
 
 562 S.E.2d 15
 
 , 18 (2002) ("Evidence showing
 
 a parents' ability, or capacity to acquire the ability
 
 , to overcome factors which resulted in their children being placed in foster care
 
 must be apparent for willfulness to attach
 
 ." (emphasis added) (citation omitted)).
 

 In
 
 D.J.D.
 
 , this Court considered the termination of parental rights under willful abandonment when the parent was incarcerated during the relevant six-month period.
 
 171 N.C.App. at 241
 
 ,
 
 615 S.E.2d at 33-34
 
 . In that case, the trial court found that,
 
 inter alia
 
 , while the respondent had been in custody, "he ... had absolutely no contact with his children"; "[h]e ha[d] made no telephone calls, sent any cards, written any letters, nor arranged for any gifts"; "no one acting on his behalf (family member or friend) had contacted the Department of Social Services [DSS] requesting
 
 *577
 
 a visit with or attempting to communicate with [his] children"; and he had paid "no child support ... but ... was not employed at the time."
 
 *864
 

 Id
 
 . at 235,
 
 615 S.E.2d at 30
 
 . The trial court also found that although the respondent "did have contact with his mother, sister, and the children's mother," he never requested those individuals, or any other family member or friend, to contact DSS to check on the welfare of his children nor to ascertain an address where he could send letters to his children.
 
 Id
 
 . Additionally, the court found that "[a]lthough respondent is limited as to what he can do at this time to provide for his children while he is incarcerated, he has failed to provide any contact, love, or affection for his children,"
 
 id.
 
 at 236,
 
 615 S.E.2d at 30
 
 , and, therefore, terminated his parental rights under abandonment. On appeal, we held that these findings were sufficient to terminate the respondent's parental rights based on abandonment, since they established that the respondent, although able to while incarcerated, "ha[d] taken none of the steps to develop or maintain a relationship with his children."
 
 Id.
 
 at 241,
 
 615 S.E.2d at 34
 
 .
 

 In
 
 B.S.O.,
 
 this Court considered a parent's deportation to another country in the context of termination based on abandonment and analogized deportation with incarceration, noting that "[t]he opportunities of an incarcerated parent are even more limited than those of a deported parent, ... [who] would be free to work, send funds to support a child, or communicate with a child by phone, internet, or mail from his own country."
 
 234 N.C.App. at 711-12
 
 ,
 
 760 S.E.2d at 64
 
 . The
 
 B.S.O.
 
 Court noted several findings made by the trial court, including that the deported parent failed to "provide[ ] any financial support for the children
 
 although [he had] the ability to do so
 
 ," had "no known disabilities," and had on one occasion contacted his social worker while in Mexico but otherwise made no effort to keep updated on his children while they were in custody.
 
 Id.
 
 at 711,
 
 760 S.E.2d at 63
 
 . The
 
 B.S.O.
 
 Court explained that "[b]oth the evidence and the court's findings reflect that
 
 respondent-father's arrest and subsequent deportation did not prevent him from communicating
 
 with his children and [the agency that retained custody of his children]."
 
 Id
 
 . at 713,
 
 760 S.E.2d at 65
 
 (emphasis added). Accordingly, we upheld the termination based upon abandonment because the findings "show[ed] that, during the relevant six-month period, respondent-father 'made no effort' to remain in contact with his children or their caretakers and neither provided nor offered anything toward their support" although able.
 
 Id.
 
 at 711,
 
 760 S.E.2d at 64
 
 .
 

 Here, despite finding that respondent-mother had a history of substance abuse and was incarcerated for multiple periods spanning across each of the determinative six months, the court also found that, during
 
 *578
 
 those months, respondent-mother failed to exercise visitation and to attend David's sports games, and failed to contact David during three of those months. Yet the court never made findings addressing how respondent-mother's periodic incarceration at multiple jails, addiction issues, or participation in a drug treatment program while in custody might have affected her opportunities to request and exercise visitation, to attend games, or to communicate with David. The trial court made no findings establishing whether respondent-mother had made any effort, had the capacity, or had the ability to acquire the capacity, to perform the conduct underlying its conclusion that respondent-mother abandoned David willfully. Unlike in
 
 D.J.D.
 
 , the trial court here made no findings indicating that it considered the limitations of respondent-mother's incarceration, or that respondent-mother was able but failed to provide contact, love, or affection to her child while incarcerated. Unlike in
 
 B.S.O.
 
 , the trial court here made no findings related to respondent-mother's ability but failure to provide financial support or her abilities but failures to make efforts to communicate with her child or her child's caretakers.
 

 We conclude that the trial court's findings (subparts B, I-M) are inadequate to support its conclusion of willful abandonment, as these findings fail to address respondent-mother's efforts or ability to request and exercise visitation, to attend David's sports games, or to communicate with David, particularly in light of the incomplete findings relating to her history of substance abuse and periodic incarcerations at multiple jails spanning each of the determinative six months, as well as the evidence of her participation in
 
 *865
 
 drug rehabilitation program while in custody and petitioner-father's testimony that he was not as receptive to her having a relationship with David while she was in and out of custody.
 

 The trial court's remaining findings, identified as subparts A-S, are inadequate to support a conclusion on the issue of abandonment. Subparts C and Q are either recitations of testimony without the force of a finding of fact.
 
 See
 

 In re M.R.D.C.,
 

 166 N.C.App. 693
 
 , 699,
 
 603 S.E.2d 890
 
 , 894 (2004) ("Recitations of the testimony of each witness
 
 do not
 
 constitute
 
 findings of fact
 
 by the trial judge...." (citations and quotation marks omitted)). Subparts A, G, H, N, O, and P are insufficiently specific, in that these findings fail to identify specific conduct within the determinative period. Subparts D, E, F, P, R, and S fail to address factual grounds which could support a conclusion that respondent-mother willfully abandoned David. Thus, the trial court's findings do not demonstrate that respondent-mother had a "purposeful, deliberative and manifest willful determination to forego all parental duties and relinquish all parental claims to
 
 *579
 
 [David]."
 
 S.Z.H.
 
 , --- N.C. App. at ----,
 
 785 S.E.2d at 348
 
 (citation and quotation marks omitted).
 

 Nonetheless, "when a court fails to make appropriate findings or conclusions, this Court is not required to remand the matter if the facts are not in dispute and only one inference can be drawn from them."
 
 In re J.K.C.
 
 ,
 
 218 N.C.App. 22
 
 , 39,
 
 721 S.E.2d 264
 
 , 276 (2012) (citation and quotation marks omitted). Here, however, there are material conflicts in the evidence relating to the issue of respondent-mother's willfulness that were not resolved by the trial court's order.
 

 C. Conflicts in Evidence
 

 According to petitioner-father's testimony, respondent-mother never sent any letters addressed to him or David during the relevant six-month period; he was receptive to respondent-mother having a relationship with David, except "[he] wasn't as receptive" "when [he] was getting text messages from the jail that [respondent-mother] was in jail every other week or every other month"; respondent-mother never called him from Durham County jail between 23 January and March 2015; she never asked him in January 2015 if David could participate in her birthday; she never called him on 3 March 2015 for David's birthday; and she never texted him between 2 and 9 March 2015, when she was temporarily released from jail.
 

 According to respondent-mother's testimony, however, she called petitioner-father on 7 January when she was released from jail and texted him about seeing David, but he "texted [her] back saying that they had plans"; she called petitioner-father "several times" between 7 and 23 January and he failed to answer; she called him twice when she was in Durham County jail between 23 January and 2 March, but he never accepted the calls; she called petitioner-father several times on 3 March to speak with David on his birthday but petitioner-father never answered; she then sent text messages asking to see David for his birthday sometime that week "[a]nd when [petitioner-father] didn't response to any of those texts, [she] sent one [requesting that he] ... at least tell [David she] love[s] him and happy birthday." Respondent-mother testified that she made several phone calls and wrote several letters "but when [petitioner-father] didn't call [her] back, ... there was nothing [she] could do." When asked why she did not exercise visitation when she was released from jail in late November 2014, she replied: "Because [petitioner-father] had cut off the visits. He was not allowing me to see [David]." Respondent-mother stated that between 9 March and 28 May, she tried to contact petitioner-father about David by sending letters
 
 *580
 
 to petitioner-father's address, "sen[ding] one [letter] every month" but "[she] never got any response."
 

 We recognize that the power to observe and listen to all the witnesses in a termination hearing "allows the trial court to 'detect tenors, tones and flavors that are lost in the bare printed record read months later by appellate judges.' "
 
 Adams v. Tessener,
 

 354 N.C. 57
 
 , 63,
 
 550 S.E.2d 499
 
 , 503 (2001) (citation omitted). Although it was certainly within the court's discretion to discredit respondent-mother's testimony regarding her attempts to contact petitioner-father about David and to attempt to request
 
 *866
 
 and exercise visitation, the current findings are inadequate or fail to resolve conflicts in the evidence material to a conclusion that respondent-mother abandoned David willfully, particularly: whether and to what extent respondent-mother called, texted, and mailed letters during the relevant period; whether and to what extent respondent-mother was able to participate in exercising parental duties on account of her periodic incarceration at multiple jails; and whether and to what extent petitioner-father hindered respondent-mother from communicating with David or exercising visitation; among other evidentiary findings relevant to determining the ultimate finding of willfulness in the context of abandonment.
 

 Without further fact-finding, we cannot determine whether the trial court's conclusions are supported by its findings. Accordingly, we vacate the termination order and remand to the trial court for further findings and conclusions relating to the issue of the willfulness of respondent-mother's conduct during the relevant six-month period, in order for the trial court to determine whether petitioner-father proved the ground of willful abandonment.
 
 See, e.g.
 
 ,
 
 In re F.G.J.,
 

 200 N.C.App. 681
 
 , 694,
 
 684 S.E.2d 745
 
 , 754 (2009) (vacating a termination order and remanding for further fact-finding to address when "the trial court's current findings [were] insufficient to permit this Court to review its decision under N.C. Gen. Stat. § 7B-1111(a)(2)"). The trial court must resolve material conflicts in the evidence related to the willfulness of respondent-mother's conduct and may, in its discretion, receive additional evidence in order to do so.
 
 In re D.R.B.,
 

 182 N.C.App. 733
 
 , 738-39,
 
 643 S.E.2d 77
 
 , 81 (2007) (vacating and remanding termination order for entry of adequate findings of fact and conclusions of law to demonstrate grounds for termination and permitting the trial court to receive additional evidence on remand).
 

 We have considered respondent-mother's remaining argument that the trial court erred by failing to require the GAL to perform his statutory duties of "offer[ing] evidence and examin[ing] witnesses at
 
 *581
 
 adjudication," as well as "explor[ing] options with the court at the dispositional hearing."
 
 See
 
 N.C. Gen. Stat. § 7B-601(a) (2015). Although the record and transcript as developed do not permit us to engage in a meaningful review, the record demonstrates that the GAL presented his best-interests report, listened to respondent-mother's testimony during adjudication, and participated during the dispositional phase of the termination hearing but is unclear as to when the GAL arrived and left the court room during the proceedings. We emphasize that adherence to the GAL program by both the GAL and the trial court is critically important to ensure minors' best interests are protected and served.
 

 III. Conclusion
 

 The trial court failed to enter adequate findings of fact and conclusions of law to demonstrate grounds for termination regarding N.C. Gen. Stat. § 7B-1111(a)(7). In addition, the trial court's order fails to resolve material conflicts in the evidence relevant to a conclusion that respondent-mother willfully abandoned David. Accordingly, we vacate the trial court's order and remand for further findings of fact and conclusions of law regarding N.C. Gen. Stat. § 7B-1111(a)(7). The trial court may hear and receive additional evidence.
 

 VACATED AND REMANDED.
 

 Judges HUNTER, JR. and DILLON concur.
 

 [1]
 

 A pseudonym is used to protect the minor's identity.