IN THE SUPREME COURT OF NORTH CAROLINA

No.115A19

Filed 27 September 2019

IN THE MATTER OF: C.B.C

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered 13 December 2019 by Judge Monica M. Bousman in District Court, Wake County. This matter was calendared in the Supreme Court on 11 September 2019 but determined on the records and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for petitioner-appellees.*

*J. Thomas Diepenrock for respondent-appellant father.*

HUDSON, Justice.

Respondent appeals from the trial court's order terminating his parental rights to his minor child, C.B.C. (Catherine),[1] on the grounds of neglect and willful abandonment. We affirm.

---

[1] A pseudonym is used to protect the identity of the juvenile and for ease of reading. *See* N.C.R. App. P. 42(b)(1).

Respondent is the biological father of Catherine and petitioners are the maternal grandparents. In 2010, respondent and Catherine's biological mother, J.F., were involved in a relationship when J.F. became pregnant with Catherine. In March 2011, before Catherine's birth, respondent was convicted of felony theft charges and began serving a 15 month sentence.

J.F. gave birth to Catherine on 26 June 2011, and moved in with petitioners in July 2011. During respondent's incarceration, J.F. brought Catherine to visit him in prison "a few" times, and she sent him pictures of Catherine. Respondent finished serving his sentence in June 2012.

After his release, respondent had limited visitation with Catherine until J.F. passed away from a suspected accidental drug overdose on 7 July 2012. Following J.F's death, respondent and petitioners became involved in a custody dispute, and petitioners were granted temporary custody of Catherine, with respondent having visitation. On 19 November 2015, the trial court entered a permanent child custody order granting petitioners legal and physical custody of Catherine and ordering that respondent have no right to visitation. At the time the order was entered, respondent was incarcerated for felony breaking and entering and misdemeanor assault and had a projected release date of 16 October 2016. In the decretal section of the custody order, the trial court provided that respondent may petition the court for visitation after his release from incarceration as long as he could demonstrate to the court that his ongoing substance abuse and mental health issues had been appropriately

addressed. The custody order also provided that respondent may continue to communicate in writing with Catherine, and that petitioners "shall deliver all appropriate communications" to Catherine.

On 4 March 2016, petitioners filed a petition to terminate respondent's parental rights alleging the grounds of dependency and willful abandonment. *See* N.C.G.S. § 7B-1111(a)(6) and (7) (2017). Respondent participated in the hearing held 13 July 2017 and opposed the termination of his parental rights. On 21 September 2017, the trial court entered an order denying the petition. The trial court found that respondent "ha[d] consistently attempted to assert custodial rights with respect to [Catherine] and ha[d] consistently desired to maintain a relationship with her." The trial court also found that there was no evidence that respondent's substance abuse issues rendered him incapable of providing for Catherine's care, and that respondent's "periodic imprisonments [did] not constitute a 'disability' or clear, cogent and convincing evidence of incapability."

On 31 August 2017, respondent was charged with multiple felonies, including larceny of firearms and breaking and entering. Respondent spent approximately three weeks in jail before he posted bond. He remained out of jail from September 2017 through March 2018. In April 2018, respondent pled guilty to multiple felonies

resulting from the August 2017 charges, and began serving his active sentence. Respondent's projected release date is in April 2022.[2]

Petitioners filed a second petition to terminate respondent's parental rights on 12 June 2018 alleging the grounds of neglect, dependency, and willful abandonment. *See* N.C.G.S. § 7B-1111(a)(1), (6), and (7). Following a 30 October 2018 hearing, the trial court entered an order on 13 December 2018, finding that grounds existed to terminate respondent's parental rights based on neglect and willful abandonment, and that termination was in Catherine's best interests. Accordingly, the trial court terminated respondent's parental rights. Respondent gave timely notice of appeal to this Court pursuant to N.C.G.S. §§ 7A-27(a)(5) and 7B-1001(a1)(1) (2017).

Our Juvenile Code provides for a two-stage process for the termination of parental rights. N.C.G.S. §§ 7B-1109, -1110 (2017). At the adjudicatory stage, the petitioner bears the burden of proving by "clear, cogent, and convincing evidence" the existence of one or more grounds for termination under section 7B-1111(a) of the General Statutes. N.C.G.S. § 7B-1109(f). "If [the trial court] determines that one or more grounds listed in section 7B-1111 are present, the court proceeds to the dispositional stage, at which the court must consider whether it is in the best interests of the juvenile to terminate parental rights." *In re D.L.W.*, 368 N.C. 835,

---

[2] Respondent testified at the hearing that his projected release date is 2 April 2020, while later arguments by counsel, and the trial court's finding of fact indicate a projected release date in 2022. Respondent does not challenge this finding.

842, 788 S.E.2d 162, 167 (2016) (citing *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614–15 (1997); N.C.G.S. § 7B-1110).

We review a trial court's adjudication under N.C.G.S. § 7B-1109 "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984) (citation omitted). The trial court's conclusions of law are reviewable de novo on appeal. *In re S.N.*, 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008), *aff'd per curiam*, 363 N.C. 368, 677 S.E.2d 455 (2009) (citation omitted).

Respondent first argues that the trial court erred in concluding grounds existed to terminate his parental rights based on willful abandonment. We conclude otherwise.

A trial court may terminate a parent's parental rights when "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C.G.S. § 7B-1111(a)(7). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. at 251, 485 S.E.2d at 617 (citation omitted). "Wilful [sic] intent is an integral part of abandonment and this is a question of fact to be determined from the evidence." *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962). "[I]f a parent withholds [that parent's] presence, [ ] love, [ ] care, the opportunity to display filial affection, and willfully [sic] neglects to lend support and

maintenance, such parent relinquishes all parental claims and abandons the child." *Id.* at 501, 126 S.E.2d at 608.

Here, the relevant six-month period preceding the petitioners' filing of the petition is 12 December 2017 to 12 June 2018. Respondent was incarcerated for approximately three of the relevant six months. However, the Court of Appeals has held[3] that "incarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision. . . . Although a parent's options for showing affection while incarcerated are greatly limited, a parent *will not be excused from showing interest in [the] child's welfare by whatever means available.*" *In re D.E.M.*, 810 S.E.2d 375, 378 (N.C. Ct. App. 2018) (citations and internal quotation marks omitted).

The trial court made the following findings of fact regarding abandonment:

> 9. From the time the Respondent bonded out on his felony charges in mid-September, 2017 until March 2018, the Respondent earned $600 per week performing repairs and handy man services. Despite earning regular income, the Respondent sent no support to or on behalf of [Catherine] during the same time period. The Respondent paid no support to or on behalf of [Catherine] since the time of this [c]ourt's last hearing in July, 2017 through the time of this proceeding.
>
> 10. The Respondent made no efforts to communicate with [Catherine] from the time of this [c]ourt's last hearing in July, 2017 to the time of the Petitioners' filing of their Petition on June 12, 2018. The Respondent did send one birthday card to [Catherine] from prison after he had been

---

[3] This Court has not previously addressed this issue.

served with the Petitioners' termination petition. Otherwise the Respondent made no efforts to communicate with [Catherine] since the time of the July, 2017 hearing despite Judge Walczyk's 2015 Custody Order providing him the opportunity to send written communications to [Catherine]. Prior to his incarceration in March 2018 following a guilty plea, Respondent had a telephone, access to transportation, had his own vehicle, and had access to a post office. Respondent testified that he or his girlfriend mailed cards to the child prior to March 2018. His testimony was uncertain as to when and how many cards were sent. His testimony was contradictory and is not credible. After his incarceration in March 2018, he received approximately five (5) cards per month from the prison chaplain at no cost to him. He used only one of these cards to mail to [Catherine] and this card was mailed after he was served with the petition to terminate his parental rights.

11. The Respondent made no effort from the time of this [c]ourt's hearing in July, 2017 through the time of this hearing to contact either of the Petitioners to determine how [Catherine] was doing, how her health was, how she was doing in school, or any other inquiry regarding her well-being. The Petitioners continue to reside at the address that they resided at the time of the July, 2017 hearing and continue to have the same telephone numbers and contact information since the time of that hearing. The Petitioners did not prevent the Respondent from contacting them in order for the Respondent to obtain information about [Catherine]. Judge Walczyk's Custody Order does not contain any prohibition on the Respondent contacting the Petitioners to obtain information concerning [Catherine].

12. Since the time of this [c]ourt's hearing in July, 2017 the Respondent has taken no steps to have Judge Walczyk's 2015 Custody Order reviewed, modified or to otherwise present evidence to that [c]ourt that he has complied with the conditions of the 2015 Custody Order that would permit him once again to have visitation with

[Catherine].

> 13. Respondent has willfully withheld his love, care, and affection from the child. He has done nothing to attempt to develop and maintain a relationship with her since his last release from prison in November 2016. He has not attempted to resume any direct contact with the child in compliance with the permanent custody order. He has not attempted to resume and [sic] parental rights or responsibility for the child. He has abandoned and neglected the child. There is a reasonable probability that he will continue to neglect the child in the future.

Respondent challenges finding of fact number 13 as not being supported by clear and convincing evidence. Specifically, respondent objects to the portion of the finding stating that he has willfully withheld his love, care, and affection and "has done nothing to attempt to develop and maintain a relationship with [Catherine]" since his release from incarceration in November 2016. Respondent argues that after his November 2016 release, he opposed the first petition to terminate his parental rights, and he sent a birthday card to Catherine in June 2018 after he had been served with the second termination petition.

However, respondent's participation in the first termination hearing in 2017 did nothing to aid in the development or continuation of his relationship with Catherine. Indeed, following the denial of the petition, respondent did not send Catherine any cards or letters, and did not take any steps to resume visitation with her. Additionally, respondent's opposition to the original petition to terminate his parental rights does not preclude the trial court from later finding that he has

willfully withheld his love, care, and affection from Catherine during the determinative six-month period. While the trial court found that respondent sent one card to Catherine after being served with the termination petition in June 2018, the court also found that the card was sent outside of the relevant six-month period, and thus not determinative in adjudicating willful abandonment under N.C.G.S. § 7B-1111(a)(7). *See also In re D.M.O.*, 794 S.E.2d 858, 861 (N.C. Ct. App. 2016) ("[T]he *'determinative'* period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." (emphasis added) (citing *In re Young*, 346 N.C. at 251, 485 S.E.2d at 617).

Nevertheless, even setting aside the portion of finding of fact number 13 stating that respondent has done nothing to attempt to develop or maintain a relationship with Catherine since his release from prison in 2016, there are ample other findings demonstrating that respondent had no contact with Catherine or petitioners for nearly one year prior to the filing of the termination petition on 12 June 2018, and that he had the ability to make at least some contact during that time but chose not to. Respondent has not challenged these findings, and they are binding on appeal. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.").

Respondent argues that the evidence and findings of fact do not support the court's conclusion that he willfully abandoned Catherine because his actions do not

evince "a settled purpose to forego all parental duties or to relinquish all parental claims" to Catherine. Respondent further contends that it was "imperative" the trial court consider his actions over the years leading up to the termination petition in order to determine whether his actions demonstrated a settled purpose to forego all parental duties. Respondent maintains that he has consistently sought a relationship with Catherine since 2012, and argues that his "longstanding and continuing efforts and actions to pursue a relationship with his daughter negate the trial court's conclusion that he willfully abandoned her."

However, while "the trial court may consider a parent's conduct outside the six-month window *in evaluating a parent's credibility and intentions*, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re D.M.O.*, 794 S.E.2d at 861 (N.C. Ct. App. 2016) (emphasis added) (internal citations, quotation marks, and alterations omitted); N.C.G.S. § 7B-1111(a)(7). Thus, while the court may consider respondent's prior efforts in seeking a relationship with Catherine to determine his credibility and intentions, respondent's prior actions will not preclude a finding that he willfully abandoned Catherine pursuant to N.C.G.S. § 7B-1111(a)(7) if he did nothing to maintain or establish a relationship with Catherine during the determinative six-month period. *See In re B.S.O.*, 234 N.C. App. 706, 713 n.4, 760 S.E.2d 59, 65 n.4 (2014) (disregarding the respondent-father's assertion that he had "close contact" with his children and the social worker prior to his deportation in determining

whether he willfully abandoned the children because it occurred outside the six-month period).

Here, the findings demonstrate that in the six months preceding the filing of the termination petition, respondent made no effort to pursue a relationship with Catherine. The trial court found that respondent did not send any cards or letters to Catherine, did not contact petitioners to inquire into Catherine's well-being, did not take any steps to modify the custody order or resume visitation after the trial court's denial of the first termination petition, and did not provide financial support for Catherine despite earning $600 per week from September 2017 until he was incarcerated in March 2018. The trial court also found that although respondent received five free cards per month while in custody, he only sent Catherine one card after being served with the termination petition.

These uncontested findings demonstrate that respondent willfully withheld his love, care, and affection from Catherine and that his conduct during the determinative six-month period constituted willful abandonment. *See In re B.S.O.*, 234 N.C. App. at 711, 760 S.E.2d at 64 (affirming termination of the respondent-father's parental rights based on willful abandonment where, in the relevant six-month period, the respondent-father "made no effort" to remain in contact with the children or their caretakers and did not provide anything toward their support). Accordingly, the trial court did not err in terminating respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(7).

The trial court's conclusion that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(7) is sufficient in and of itself to support termination of respondent's parental rights. *See In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003) (citation omitted) ("A finding of any one of the enumerated grounds for termination of parental rights under N.C.G.S. 7B-1111 is sufficient to support a termination."). Respondent did not challenge the trial court's determination that termination was in Catherine's best interests. Accordingly, we affirm the trial court's order terminating respondent's parental rights.

AFFIRMED.