IN THE SUPREME COURT OF NORTH CAROLINA

No.184A19

Filed 1 November 2019

IN THE MATTER OF: N.D.A.


On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an order entered 18 March 2019 by Judge William F. Brooks in District Court, Wilkes County. This matter was calendared in the Supreme Court on 4 October 2019 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

> *Vannoy, Colvard, Triplett & Vannoy, P.L.L.C., by Daniel S. Johnson, for petitioner-appellee.*
>
> *Wendy C. Sotolongo, Parent Defender, by Annick Lenoir-Peek, Deputy Parent Defender, for respondent-appellant father.*


ERVIN, Justice.

Respondent-father Mickey W. appeals from the trial court's order terminating his parental rights in his minor child, N.D.A.,[1] on the grounds of neglect and willful abandonment. Because we conclude that the findings in the trial court's order are insufficient to support the termination of respondent-father's parental rights on either of the grounds upon which the trial court's termination order rests, we vacate

---

[1] N.D.A. will be referred to throughout the remainder of this opinion as "Nanc"y, which is a pseudonym used to protect the identity of the juvenile and for ease of reading. *See* N.C. R. App. P. 42(b)(1).

the trial court's termination order and remand this case to the District Court, Wilkes County, for further proceedings not inconsistent with this opinion.

Respondent-father is Nancy's biological father, while petitioner Heather S. is Nancy's legal custodian. In January 2014, Nancy and her biological mother, Heaven C., moved into petitioner's residence. At that time, the two adult women were involved in a romantic relationship. Nancy and her mother continued to live in petitioner's residence for the next year and a half.

In July 2015, the Wilkes County Department of Social Services began investigating a report arising from concerns about the mother's mental health, parenting skills, and failure to properly care for and supervise Nancy. At that time, Nancy was left in petitioner's care as part of a safety placement while DSS provided Nancy's mother with case management services. However, in December 2015, the mother told DSS that she was unable to properly care for Nancy. As a result, DSS filed a petition alleging that Nancy was a neglected and dependent juvenile. At the time that DSS filed this petition, respondent-father was incarcerated and had a projected release date of 4 December 2016.

After a hearing held on 1 February 2016, Judge David V. Byrd entered an order on 20 February 2016 finding Nancy to be a neglected and dependent juvenile, awarding legal and physical custody of Nancy to petitioner, and releasing DSS from any further responsibility relating to Nancy's care and supervision. In the 20 February 2016 order, Judge Byrd ordered that neither parent would be allowed to

visit Nancy while incarcerated and that, in the event that either parent was not incarcerated, he or she was entitled to a minimum of one hour of supervised visitation with Nancy two times per month, with the necessary supervision to be provided by petitioner, a person or organization approved by petitioner, or personnel associated with "Our House."

Although respondent-father was released from incarceration in December 2016, he did not contact or visit Nancy following his release. In August 2018, petitioner contacted respondent-father, through social media, and the mother, by phone, for the purpose of requesting that they relinquish their parental rights in Nancy so that petitioner could adopt her. However, neither of Nancy's parents acceded to this request. Shortly thereafter, respondent-father was charged with and convicted of felonious breaking and entering. Respondent-father's current projected release date is July 2020.

On 14 August 2018, petitioner filed a petition seeking to have both parents' parental rights in Nancy terminated on the grounds of neglect and willful abandonment. *See* N.C.G.S. § 7B-1111(a)(1) and (7) (2017). After a hearing held on 27 February 2019, the trial court entered an order on 18 March 2019 finding that grounds existed to terminate respondent-father's and the mother's parental rights in Nancy based upon both of the grounds alleged in the petition and that the termination of both parents' parental rights in Nancy would be in the child's best interests.

Respondent-father noted an appeal from the trial court's termination order to the Court of Appeals.

As an initial matter, we note that, even though respondent-father noted his appeal from the trial court's order in a timely manner, he erroneously designated the Court of Appeals, rather than this Court, as the judicial body to which his appeal would lie. *See* N.C.G.S. §§ 7A-27(a)(5), 7B-1001(a1)(1); N.C. R. App. P. 3(d), 3.1(a). In spite of this deficiency in respondent-father's notice of appeal, petitioner has not sought the dismissal of respondent-father's appeal and respondent-father has not filed a petition seeking the issuance of a writ of certiorari authorizing review of the trial court's termination order. In light of the seriousness of the issues involved in this termination of parental rights case, petitioner's failure to raise any issue arising from respondent-father's defective notice of appeal, and the fact that the appellate entries signed by the trial court correctly designate this Court as the body to which respondent-father's appeal would lie, we elect to treat respondent-father's brief as a certiorari petition and issue a writ of certiorari authorizing review of respondent-father's challenges to the trial court's termination order on the merits. *See* N.C. R. App. P. 21(a)(1) (stating that "[t]he writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action"); *see also In re Z.L.W.*, 831 S.E.2d 62, 65 (N.C. 2019) (stating that this Court granted the respondent-father's certiorari petition given that his notice of

appeal improperly designated the Court of Appeals as the court to which his appeal from the trial court's order had been taken).

In seeking relief from the trial court's termination order before this Court, respondent-father contends that the trial court erred by terminating his parental rights in Nancy on the grounds that the trial court's findings of fact do not support the trial court's conclusion that respondent-father's parental rights in Nancy were subject to termination on the grounds of neglect and willful abandonment. The relevant provisions of the North Carolina General Statutes establish a two-stage process for the termination of a parent's parental rights in a juvenile. N.C.G.S. §§ 7B-1109, -1110 (2017). At the adjudicatory stage, the petitioner bears the burden of proving by "clear, cogent, and convincing evidence" that one or more of the grounds for termination delineated in N.C.G.S. § 7B-1111 exist. N.C.G.S. § 7B-1109(e), (f). "If [the trial court] determines that one or more grounds listed in section 7B-1111 are present, the court proceeds to the dispositional stage, at which the court must consider whether it is in the best interests of the juvenile to terminate parental rights." *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016) (citing *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614–15 (1997); N.C.G.S. § 7B-1110). This Court reviews a trial court's adjudication decision pursuant to N.C.G.S. § 7B-1109 "in order to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law," *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984) (citing *In re Moore*, 306

N.C. 394, 404, 293 S.E.2d 127, 133 (1982)), with the trial court's conclusions of law being subject to de novo review on appeal. *In re S.N.*, 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008), *aff'd per curiam*, 363 N.C. 368, 677 S.E.2d 455 (2009).

In its termination order, the trial court made the following findings of fact in support of its conclusion that respondent-father's parental rights in Nancy were subject to termination on the grounds of neglect and willful abandonment:

> 8.     The Father has had no contact with the Petitioner and has not participated in any visitation. He has been incarcerated since August 2018. The Father has a significant criminal record dating back to 1999.
>
> 9.     The Father has had no contact with the minor child in four years. He testified that he attempted to set up visits with the child but could not get any assistance in doing so.
>
> 10.    The Father has had significant problems with substance abuse for many years.
>
> . . . .
>
> 13.    Neither [parent] has ever provided financial support for the minor child.
>
> 14.    Neither [parent] has ever sent any cards, gifts, or usual and customary tokens of affection to the minor child.
>
> 15.    The child has been neglected by the [parents] as that term is defined in Chapter 7B of the General Statutes. The [parents] have not provided any type of support or care for the child. Their actions reflect an indifference to the welfare and well-being of the child.
>
> 16.    The [parents] willfully abandoned the child as that term is defined by N.C.G.S. § 7B-1111(a)(7) for the six

months immediately preceding the filing of the petition in this matter.

As an initial matter, respondent-father contends that a number of the trial court's findings of fact are legally defective. More specifically, respondent-father asserts that the second sentence contained in Finding of Fact No. 9 consists of nothing more than a mere recitation of his own testimony and is not, for that reason, a valid finding of fact. We agree with the Court of Appeals that "[r]ecitations of the testimony of each witness *do not* constitute *findings of fact* by the trial judge." *Moore v. Moore*, 160 N.C. App. 569, 571–72, 587 S.E.2d 74, 75 (2003) (citation omitted). By stating that respondent-father had testified that he had "attempted to set up visits with the child but could not get any assistance in doing so," the trial court failed to indicate whether it deemed the relevant portion of respondent-father's testimony credible. As a result, we are compelled to disregard the second sentence contained in Finding of Fact No. 9 in evaluating the validity of the trial court's termination order.

In addition, respondent-father contends that Finding of Fact No. 10 lacked sufficient evidentiary support on the grounds that "[n]o one testified that he suffered from substance abuse." However, respondent-father testified that he has "had a substance abuse problem"; that he "slip[ped] and got back on drugs" after the death of his mother in February 2018; that, when petitioner contacted him in August 2018, he "was trying to get [his] life away from that and be a part of [Nancy's] life"; and that he had last used any illegal substance around the time of his arrest in August 2018.

In addition, respondent-father testified that he was incarcerated at the time of the termination hearing as the result of his drug use. As a result, the trial court did not err by finding that respondent-father had "had significant problems with substance abuse for many years."

Although respondent-father acknowledges that the record supports the trial court's statement in Finding of Fact No. 14 that "[n]either [parent] has ever sent any cards, gifts, or usual and customary tokens of affection to the minor child," he attempts to explain his failure to send such items to the child by pointing to his testimony that he did not know petitioner's address and that he did not want to get into trouble by reaching out to her directly. In view of his concession that the record supports the contents of Finding of Fact No. 14, that finding is presumed to rest upon competent evidence and is, for that reason, binding for purposes of appellate review. *See In re T.N.H.*, 831 S.E.2d 54, 58 (N.C. 2019) (stating that "[f]indings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal" (citation omitted)).

Finally, respondent-father contends that Finding of Fact Nos. 15 and 16, which consist of determinations that the parents' parental rights in the child were subject to termination on the grounds of neglect and abandonment, constitute conclusions of law rather than findings of fact given that they involve the exercise of judgment or the application of legal principles. As the Supreme Court of the United States has stated, an "ultimate finding is a conclusion of law or at least a determination of a

mixed question of law and fact" and should "be distinguished from the findings of primary, evidentiary, or circumstantial facts." *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, 491, 57 S. Ct. 569, 574, 81 L. Ed. 755, 762 (1937); *see also In re Anderson*, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002) (stating that "[u]ltimate facts are the final resulting effect reached by processes of logical reasoning from the evidentiary facts" (citation omitted)). Regardless of whether statements like those contained in Finding of Fact Nos. 15 and 16 are classified as findings of ultimate facts or conclusions of law, that classification decision does not alter the fact that the trial court's determination concerning the extent to which a parent's parental rights in a child are subject to termination on the basis of a particular ground must have sufficient support in the trial court's factual findings. *See In re D.M.O.*, 250 N.C. App. 570, 573, 794 S.E.2d 858, 861 (2016) (stating that "a trial court must make adequate evidentiary findings to support its ultimate finding of willful intent" (citation omitted)). As a result, our analysis of respondent-father's challenge to the validity of Finding of Fact Nos. 15 and 16 will be addressed in the course of our analysis of the lawfulness of the trial court's determinations concerning the extent to which respondent-father's parental rights in Nancy were subject to termination on the basis of neglect and abandonment.

Next, respondent-father contends that the trial court erred by determining that his parental rights in Nancy were subject to termination on the grounds of willful abandonment. A parent's parental rights in a child are subject to termination when

"[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion." N.C.G.S. § 7B-1111(a)(7). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. at 251, 485 S.E.2d at 617 (citation omitted). "[I]f a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962) (citation omitted). The Court of Appeals has held that, "[w]hether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence." *In re Adoption of Searle,* 82 N.C. App. 273, 276, 346 S.E.2d 511, 514 (1986) (citation omitted). We agree with the Court of Appeals that, "[a]lthough the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re D.E.M.*, 810 S.E.2d 375, 378 (N.C. Ct. App. 2018) (citation omitted).

In attempting to persuade us that the trial court erred in determining that his parental rights in Nancy were subject to termination on the basis of willful abandonment, respondent-father argues that the trial court failed to address the willfulness of his conduct in spite of the fact that his failure to visit with Nancy and

to take the other actions mentioned in the trial court's findings was not willful. In support of this contention, respondent-father points to his testimony that he attempted to contact Our House, DSS, and the office of the Clerk of Superior Court fifteen times over a period of a year and a half for the purpose of obtaining the ability to visit Nancy without success. According to respondent-father, the trial court failed to make any findings concerning the efforts that he made to visit with his daughter and that, had the trial court made factual findings consistently with his testimony, it would have been unable to find that he willfully abandoned Nancy. On the other hand, petitioner contends that the trial court was free to disbelieve respondent-father's testimony concerning his efforts to visit with Nancy and argues that respondent-father's conduct demonstrates that he was completely indifferent to Nancy's well-being.

After careful examination of the trial court's findings of fact, the Court is persuaded that these findings are insufficient to support a determination that respondent-father willfully abandoned Nancy. *See In re D.R.B.*, 182 N.C. App. 733, 738, 643 S.E.2d 77, 80 (2007); *see also D.M.O.*, 250 N.C. App. at 573, 794 S.E.2d at 861 (stating that, "[b]ecause 'wilful intent is an integral part of abandonment' " and because willfulness " 'is a question of fact to be determined from the evidence[,]' a trial court must make adequate evidentiary findings to support its ultimate finding of willful intent." (internal citation omitted)). Although the trial court found that respondent-father had not had any contact with petitioner or Nancy, had not visited

with Nancy, had not provided any financial support for Nancy, and had not sent any cards, gifts, or tokens of affection to Nancy, the trial court's findings fail to adequately address the extent to which respondent-father's acts or omissions were willful in spite of the fact that respondent-father's unchallenged testimony tended to show that he had unsuccessfully attempted to work out arrangements under which he could visit with Nancy on multiple occasions following his release from incarceration in December 2016, with these efforts including making contact with Our House, DSS, and the office of the Clerk of Superior Court on at least fifteen occasions between December 2016 and May 2018. In view of the fact that the termination petition was filed in August 2018, respondent-father's testimony suggests that his attempts to make arrangements to visit with Nancy occurred during the relevant six months immediately preceding the filing of the petition. Although petitioner is certainly correct in noting that the trial court was free to disbelieve respondent-father's testimony, *see Phelps v. Phelps*, 337 N.C. 344, 357, 446 S.E.2d 17, 25 (1994), the trial court's findings with respect to the willfulness issue consisted of nothing more than a recitation of the relevant portion of respondent-father's testimony without making any determination as to whether the relevant portion of respondent-father's testimony was credible.

In addition, respondent-father testified that he had no relationship with petitioner sufficient to persuade him that he had the ability to contact her directly, that he believed that he was not permitted do so, and that, even though he knew that

petitioner lived in his community, he did not know her address and could not send Nancy any cards, letters, or gifts for that reason. As was the case with respect to the issue of visitation, the trial court's findings make no mention of the issue of whether respondent-father had the ability to contact Nancy or petitioner during the relevant six-month period. Similarly, the trial court failed to make any findings concerning the extent to which respondent-father had the ability to pay financial support for Nancy during the relevant six-month period even though it found that respondent-father had willfully failed to make such payments. *See Pratt*, 257 N.C. at 501–02, 126 S.E.2d at 608 (stating that "a mere failure of the parent of a minor child in the custody of a third person to contribute to its support does not in and of itself constitute abandonment" given that "[e]xplanations could be made which would be inconsistent with a wilful intent to abandon"). Thus, given the absence of any findings of fact concerning respondent-father's ability to visit with Nancy, to contact petitioner or his daughter, or to pay support during the relevant time period, the trial court's findings do not "demonstrate that [respondent] had a 'purposeful, deliberative and manifest willful determination to forego all parental duties and relinquish all parental claims to [Nancy].'" *In re D.M.O.*, 250 N.C. App. at 573, 794 S.E.2d at 861-62 (citation omitted). As a result, while we express no opinion concerning the issue of whether the record contains sufficient evidence to support a finding that respondent-father willfully abandoned Nancy, the trial court's evidentiary findings fail to support its ultimate determination that respondent-father willfully abandoned Nancy for a

period of at least six consecutive months immediately preceding the filing of the termination petition in accordance with N.C.G.S. § 7B-1111(a)(7).

Additionally, respondent-father argues that the trial court erred by finding that his parental rights in Nancy were subject to termination on the grounds of neglect because it failed to make certain required findings of fact and because the findings of fact that the trial court did make do not support its determination that respondent-father's parental rights in Nancy were subject to termination on the grounds of neglect. According to N.C.G.S. § 7B-1111(a)(1), a trial court has the authority to terminate a parent's parental rights in a child in the event that the parent has neglected the child as that term is defined in N.C.G.S. § 7B-101, which provides that a neglected juvenile is, among other things, a juvenile who "does not [receive] proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned." N.C.G.S. § 7B-101(15). The Court of Appeals held that, "[i]n deciding whether a child is neglected for purposes of terminating parental rights, the dispositive question is the fitness of the parent to care for the child 'at the time of the termination proceeding.'" *In re L.O.K.*, 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (quoting *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) (emphasis omitted)). In the event that "a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, 'requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights

impossible.' " *Id.* (citation omitted). In such circumstances, the trial court may find that a parent's parental rights in a child are subject to termination on the grounds of neglect in the event that the petitioner makes "a showing of past neglect and a likelihood of future neglect by the parent." *In re D.L.W.*, 368 N.C. at 843, 788 S.E.2d at 167 (citation omitted).

In his initial challenge to the trial court's determination that respondent-father's parental rights in Nancy were subject to termination on the grounds of neglect, respondent-father argues that the trial court failed to make a finding regarding the likelihood of future neglect and that the record fails to contain sufficient evidence to support any such finding had one been made. According to respondent-father, the underlying adjudication of neglect rested upon the mother's mental health difficulties rather than upon any act or omission by respondent-father, with the record containing no evidence tending to show that respondent-father was likely to neglect Nancy in the event that she was to be placed in his care in the future. Petitioner, on the other hand, argues that the trial court was not required to make findings concerning the likelihood of future neglect in this case because the trial court did not rely on the previous neglect adjudication in determining that respondent-father had neglected Nancy. According to petitioner, the trial court's findings relate to respondent-father's treatment of Nancy after she was placed in petitioner's custody in February 2016, so that the trial court's finding of neglect rested upon current

neglect rather than a combination of past neglect coupled with a likelihood of repeated neglect in the future.

A careful analysis of the trial court's termination order reveals that it contains few, if any, findings that appear to assume the applicability of the two-step method of analysis employed in cases involving past neglect and a likelihood of future neglect. For example, the trial court did not find that Nancy had previously been adjudicated to be a neglected juvenile or that there was a likelihood that she would be neglected in the future in the event that she was to be placed in respondent-father's care. Instead, as petitioner suggests, it appears the trial court's finding of neglect was based upon a determination that respondent-father was currently neglecting Nancy, with this determination resting upon respondent-father's lack of contact with Nancy and his current lack of involvement in Nancy's life. More specifically, the trial court's determination that respondent-father's parental rights in Nancy were subject to termination on the grounds of neglect seems to have hinged upon evidentiary findings that respondent-father had failed to: (1) visit with Nancy; (2) contact petitioner or Nancy; (3) provide any financial support for Nancy; and (4) send any cards, gifts, or tokens of affection to Nancy.

A trial court is entitled to terminate a parent's parental rights in a child for neglect based upon abandonment pursuant to N.C.G.S. § 7B-1111(a)(1) in the event that the trial court finds that the parent's conduct demonstrates a "wilful neglect and refusal to perform the natural and legal obligations of parental care and support."

*Pratt*, 257 N.C. at 501, 126 S.E.2d at 608. We agree with the Court of Appeals that, "in order to terminate a parent's rights on the ground of neglect by abandonment, the trial court must make findings that the parent has engaged in conduct 'which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child' as of the time of the termination hearing." *In re C.K.C.*, 822 S.E.2d 741, 745 (N.C. Ct. App. 2018) (citation omitted). As we have previously discussed in connection with our analysis of the validity of the trial court's decision that respondent-father's parental rights in Nancy were subject to termination on the grounds of willful abandonment pursuant to N.C.G.S. § 7B-1111(a)(7), the trial court's findings fail to adequately address the issue of the willfulness of respondent-father's conduct.[2] Unlike abandonment as a ground for termination under N.C.G.S. § 7B-1111(a)(7), the relevant time period for a finding of neglect by abandonment is not limited to the six consecutive months immediately preceding the filing of the termination petition. *See In re Humphrey*, 156 N.C. App. 533, 541, 577 S.E.2d 421, 427 (2003). Therefore, a trial court may consider a parent's conduct over the course of a more extended period of time in determining whether the parent in question has neglected his or her child by abandonment. *See Id.*

---

[2] Although the word "willful" does not appear in the statutory definition of neglect by abandonment, N.C.G.S. § 7B-101(15), this Court has suggested that abandonment is inherently a willful act. *See Pratt*, 257 N.C. at 501, 126 S.E.2d at 608 (stating that "abandonment imports any wilful or intentional conduct on the part of the parent" and that "[w]ilful intent is an integral part of abandonment").

In its termination order, the trial court found that respondent-father had not had any contact with Nancy since at least 2015. On the other hand, the record reflects that respondent-father was incarcerated at the time that DSS began its investigation relating to Nancy in 2015, remained incarcerated at the time that Nancy was adjudicated to be a neglected and dependent juvenile in February 2016, and remained incarcerated through December 2016. Although "incarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision[,]" *In re T.N.H.*, 831 S.E.2d at 62 (citation omitted), the trial court failed to make any findings of fact regarding whether respondent-father had the ability to contact petitioner and Nancy while he was incarcerated, with such findings being necessary in order for the trial court to make a valid determination regarding the extent to which respondent-father's failure to contact Nancy and petitioner from 2014 through December 2016 was willful. *See In re D.M.O.*, 250 N.C. App. at 575, 794 S.E.2d at 862 (stating that "the circumstances attendant to a parent's incarceration are relevant when determining whether a parent willfully abandoned his or her child"). In addition, the record reflects that, even though the initial adjudication order granted the parents a minimum of one hour of supervised visitation twice per month, that order also provided that neither parent was entitled to visit with Nancy while he or she was incarcerated. Simply put, the trial court failed to make any findings of fact relating to the issue of the extent, if any, to which respondent-father's incarceration affected his ability to visit with or otherwise contact Nancy.

As a result, even though the trial court's failure to make a finding concerning the likelihood that respondent-father would neglect Nancy in the event that she was placed in his care did not constitute error in light of the legal theory upon which the trial court's finding of neglect was based, the trial court's findings of fact did not adequately support a determination that respondent-father's parental rights in Nancy were subject to termination based upon neglect by abandonment given the absence of any findings concerning respondent-father's ability to contact petitioner or Nancy, to exercise visitation, or to pay any support in order to determine that his abandonment was willful. Although we again refrain from expressing any opinion concerning the extent, if any, to which the record evidence would support a finding that respondent-father's parental rights in Nancy were subject to termination on the grounds of neglect by abandonment, we hold that the trial court's findings of fact fail to adequately support its determination that respondent-father's parental rights in Nancy were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(1).

Finally, respondent-father contends that the trial court erred by failing to act impartially during the termination hearing, with this lack of impartiality being demonstrated by trial court's decision to question various witnesses during the hearing in a manner that went beyond the need to ensure that the record was clear. According to respondent-father, the trial court's actions had the effect of relieving petitioner of her need to satisfy the applicable burden of proof "by asking questions that the petitioner failed to ask during its principal questioning of the witnesses."

Petitioner, on the other hand, contends that respondent-father received a fair hearing and that the manner in which the trial court questioned various witnesses did not demonstrate the existence of bias in favor of petitioner and against respondent-father. On the contrary, petitioner argues that the questions that the trial court posed during the termination hearing simply clarified the record and that respondent-father has failed to point to any question that showed the existence of any bias on the part of the trial court.

A trial court "may interrogate witnesses, whether called by itself or by a party." N.C. R. Evid. 614(b). As this Court has previously stated, "it is proper for the judge to propound competent questions to a witness [during a trial] in order to obtain a proper understanding and clarification of his testimony, or to bring out some fact that has been overlooked." *State v. Smith*, 240 N.C. 99, 102, 81 S.E.2d 263, 265–66 (1954) (citations omitted). Respondent-father has failed to direct our attention to any specific question or questions that the trial court posed during the hearing that, in respondent-father's opinion, tended to show the existence of bias on the part of the trial court. Instead, respondent-father's argument rests upon the frequency with which the trial court posed questions to various witnesses and a contention that the questions that the trial court posed had the effect of helping petitioner to satisfy the applicable burden of proof. We do not find respondent-father's argument to be persuasive.

At the termination hearing, the trial court questioned petitioner about her work schedule, her reason for contacting respondent through social media instead of by phone, and the nature and extent of respondent-father's contacts with her. Similarly, during respondent-father's testimony, the trial court asked several questions in an attempt to clarify issues such as the number of times that respondent-father had contacted Our House, the dates upon which respondent-father had been incarcerated, the length of time during which respondent-father had been incarcerated, and the date upon which respondent-father's mother had died. Each of these matters was relevant to a proper determination of the issues that were before the trial court in this case. As a result, we conclude that the trial court's questioning of witnesses during the termination hearing did not go beyond that needed to clarify matters addressed during the testimony of the parties and that the questions that the trial court posed during the termination hearing did not, for that reason, tend to show that the trial court was in any way biased against respondent-father.

Thus, for the reasons set forth above, we hold that the trial court's findings of fact are insufficient to support its determination that respondent-father's parental rights in Nancy were subject to termination on the grounds of neglect and abandonment and that the trial court did not fail to act impartially during the termination hearing. As a result, we vacate the trial court's termination order and remand this case to the District Court, Wilkes County, for further proceedings not inconsistent with this opinion, including, the entry of a new order containing proper

findings and conclusions addressing the issue of whether grounds exist to support the termination of respondent-father's parental rights in Nancy.  The trial court may, in the exercise of its discretion, receive additional evidence on remand if it elects to do so.  *See In re T.M.H.*, 186 N.C. App. 451, 456, 652 S.E.2d 1, 3 (2007).

VACATED AND REMANDED.