IN THE SUPREME COURT OF NORTH CAROLINA

No. 212A19

Filed 3 April 2020

IN THE MATTER OF: Z.A.M. and E.B.M.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered 6 March 2019 by Judge Wesley W. Barkley in District Court, Caldwell County. This matter was calendared in the Supreme Court on 25 March 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

> *Staff Attorney Lucy R. McCarl for petitioner-appellee Caldwell County Department of Social Services.*
>
> *Womble Bond Dickinson (US) LLP, by Lawrence Matthews and Erin Epley, for appellee Guardian ad Litem.*
>
> *Rebekah W. Davis for respondent-appellant father.*
>
> *Parent Defender Wendy C. Sotolongo, by Assistant Parent Defender J. Lee Gilliam, for respondent-appellant mother.*

NEWBY, Justice.

Respondent-father and respondent-mother appeal from an order entered by the trial court terminating their parental rights to their children, Z.A.M. (Zane) and

E.B.M. (Ethan)[1]. Upon careful consideration of respondents' arguments, we affirm the trial court order terminating respondents' parental rights.

Caldwell County Department of Social Services (DSS) has a history of involvement with these respondent-parents. The juveniles, Ethan and Zane, have been the subject of eight Child Protective Services (CPS) reports, four of which resulted in determinations that services were appropriate due to parental abuse and domestic violence between respondents. The children's half-siblings also have an extensive history with CPS and have been raised by relatives. Respondents have a long history of substance abuse; criminal charges related to respondent-father's alcohol abuse date back to 1987, and criminal charges related to respondent-mother's substance abuse date back to 2007.

In February 2017, DSS became involved with the juveniles again due to respondent-parents' alcohol and substance abuse, and due to repeated domestic violence between respondent-parents. Once DSS became involved, respondent-mother took the juveniles to live with their maternal grandparents, with whom the juveniles had previously lived for over a year. While the juveniles resided with their grandparents, respondent-father admitted that he consumed alcohol, and respondent-mother admitted that she regularly used crack cocaine and opiates and engaged in criminal activity to support her drug habit. Though respondent-father

---

[1] Pseudonyms are used to protect the identity of the juveniles and for ease of reading.

called in weekly to check on the children, he was typically inebriated during the calls. Neither parent attempted to visit the children or offered any financial support.

After several incidents of domestic violence between respondents, on 11 July 2017, DSS filed juvenile petitions alleging Zane and Ethan were neglected and dependent. After a hearing, on 6 September 2017, the trial court entered adjudication and disposition orders concluding that the children were neglected and dependent. It awarded DSS custody of the children, and DSS determined that the juveniles should continue to reside with their maternal grandparents.

The trial court issued a case plan requiring respondents to, *inter alia*, complete clinical assessments with substance abuse components and comply with recommendations; execute consents for release of information to allow DSS to follow up with service providers; submit to random drug and alcohol screens; complete domestic violence assessments, comply with recommendations, and refrain from acts of violence; refrain from illegal drug and alcohol use; comply with the visitation plan; maintain appropriate housing and employment; and cooperate with the children's therapists. Respondents were allowed one hour of supervised visitation per week.

Respondents' efforts to address their substance and alcohol abuse varied. Respondent-mother completed sporadic detox programs but did not complete the rest of her required substance abuse treatment. Respondent-mother relapsed numerous times, missing and failing multiple drug tests. At one point, respondent-mother did

find employment, but she admitted to using her paycheck from the job to buy drugs. To further support her drug habit during relapses, respondent-mother committed various criminal acts resulting in multiple convictions and periods of criminal confinement while the children were out of the home. Furthermore, respondent-mother had not completed her required domestic violence treatment classes. She continued her relationship with respondent-father, resulting in more instances of domestic violence. Specifically, in March 2018, respondent-mother reported that respondent-father was intoxicated and had become violent, and she locked herself in the bathroom until law enforcement responded and removed her from the home. Based on this and respondents' continuous substance abuse, in March 2018, the trial court ordered that respondent-parents could no longer visit the minor children until respondent-parents could each pass two consecutive negative drug screens.

While respondent-father had begun Substance Abuse Intensive Outpatient Treatment (SAIOP) at the end of 2017, during this treatment, on 27 April 2018, respondent-father admitted to relapsing. In June 2018, respondent-father passed two consecutive alcohol screening tests and was able to resume visitation privileges. Visitation continued until 24 August 2018, however, when respondent-father failed a breathalyzer test. Despite respondent-father's alcohol use, he completed SAIOP treatment at the end of August 2018, after having failed his breathalyzer test days earlier. He then failed another alcohol screen on 21 September 2018. Additionally, respondent-father refused to attend any form of inpatient treatment from the time

the children were removed from the home until after he knew that DSS would be pursuing termination of parental rights. Beginning 16 December 2018, he attended an approximately three-week inpatient program, two months before the termination hearing.

Prior to the 17 October 2018 review hearing, the trial court had established the primary permanent plan for the children as reunification and the secondary plan as adoption. Following the October hearing, on 1 November 2018, the trial court issued an order finding that the issues that led to DSS involvement continued to exist and that further efforts for reunification of the children with respondents would be unsuccessful and inconsistent with the best interests, welfare, health, and safety of the children. Accordingly, the trial court ceased reunification efforts and changed the primary permanent plan for the children to adoption and the secondary plan to guardianship.

On 21 December 2018, DSS filed a motion to terminate respondents' parental rights on grounds of neglect and willfully leaving the children in foster care for more than twelve months without making reasonable progress to correct the conditions that led to their removal. *See* N.C.G.S. § 7B-1111(a)(1), (2) (2019).

On 20 February 2019, the trial court held a hearing on DSS's petition to terminate respondents' parental rights. After hearing and considering all of the evidence, the trial court made the following findings relevant to its adjudication of

grounds to terminate respondents' parental rights under N.C.G.S. § 7B-1111(a)(1) and (2):

> 14. [On] September 6, 2017, the juveniles were adjudicated to be neglected and dependent juveniles pursuant to N.C.G.S. § 7B-101(5) and N.C.G.S. § 7B-101(9). Respondent parents each appeared at the hearing and stipulated to the allegations set forth in the juvenile petitions as modified in the written stipulation submitted to the court.
>
> 15. The juveniles are neglected juveniles within the meaning of 7B-101(15) and such neglect by Respondent father continues as of today's hearing. Respondent father has failed to adequately address his issues of alcohol abuse which contributed to domestic violence in the home. Respondent father's issues with alcohol and domestic violence caused the need for a Comprehensive Clinical Assessment (CCA) and treatment. Respondent father has received extensive treatment for his abuse of alcohol, including the completion of 90 hours of Substance Abuse Intensive Outpatient (SAIOP) treatment. Despite receiving such intensive treatment, Respondent father continues to use alcohol. He has experienced one period of sobriety in excess of three (3) months during the twenty-two (22) months the juveniles have been placed out of the home of the Respondent parents. Respondent father has willfully failed to successfully address his issues of alcohol abuse. These issues will continue to exist in the foreseeable future such that the juveniles will be unable to safely return to the home of the Respondent father.
>
> 16. The Respondent father has willfully left the juveniles in foster care for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances have [sic] been made in correcting the conditions which led to the juveniles to be placed out of the home. Respondent father submitted to a breathalyzer screen conducted by law enforcement personnel on August 24, 2018, and registered a blood alcohol level of 0.18.

Respondent father failed another breathalyzer screen on September 21, 2018, with a blood alcohol level of 0.13. Respondent father also has a history of evading alcohol screens, refusing to submit to alcohol screens as ordered by the court, and admitting to use of alcohol. Respondent father's behavior constitutes a willful failure to successfully address his abuse of alcohol.

17. The juveniles are neglected juveniles within the meaning of 7B-101(15) and such neglect by Respondent mother continues as of today's hearing. Respondent mother has made sincere efforts to address her issues of substance abuse, including the use of cocaine, methamphetamines, and opiates. However, her continued use of illegal substances involves multiple relapses which led to criminal confinement and instances of domestic violence with Respondent father. Respondent mother completed a CCA and attended some treatment. She has not sought treatment for domestic violence. She has attended inpatient treatment while the juveniles have been out of the home and is presently seeking her third inpatient treatment due to her continued use of illegal substances. She remains in a relationship with respondent father.

18. Respondent mother has willfully left the juveniles in foster care for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juveniles. Specifically, Respondent mother continues to willfully abuse substances despite participating in various treatment activities. She has relapsed several times over the past 12 months. She has engaged in criminal activities while under the influence of drugs and alcohol. Respondent mother has also failed to adequately address the issue of domestic violence. She did not complete domestic violence treatment classes and remains in a relationship with Respondent father. There is a reasonable probability that Respondent mother's issues of substance abuse will continue to exist in the foreseeable future such that the juveniles will be unable to safely return to the home of

Respondent mother.

Based on these findings, the trial court concluded:

> 4. The juveniles are neglected juveniles as defined by N.C.G.S. § 7B-101(15) and such neglect continues as [of] the date of the hearing herein. There is a strong possibility that such neglect will be repeated in the future.
>
> 5. The juveniles have been willfully left in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the Court that outside of consideration of poverty, reasonable progress under the circumstances has been made correcting the conditions which led to the removal of the juvenile[s].
>
> 6. Grounds exist as hereinabove stated within the Findings of Fact to terminate the parental rights of . . . Respondent mother . . . and Respondent father . . . pursuant to N.C.G.S. § 7B-1111(a)(1) and (2).

Thus, the trial court also concluded it was in the best interests of the children to terminate respondents' parental rights, allowing the juveniles' maternal grandparents to pursue adoption. Respondents appeal.

On appeal respondent-father challenges the adjudication of grounds to terminate his parental rights and the trial court's best interests determination. Respondent-mother only challenges the trial court's best interests determination.

Our Juvenile Code provides for a two-step process for termination of parental rights proceedings consisting of an adjudicatory stage and a dispositional stage. *See* N.C.G.S. §§ 7B-1109, -1110 (2019). The petitioner bears the burden at the adjudicatory stage of proving by "clear, cogent, and convincing evidence" that one or

more grounds for termination exist under section 7B-1111(a) of the North Carolina General Statutes. N.C.G.S. § 7B-1109(f) (2019). If the trial court adjudicates one or more grounds for termination, "the court proceeds to the dispositional stage, at which the court must consider whether it is in the best interests of the juvenile to terminate parental rights." *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016) (citing *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614–15 (1997); N.C.G.S. § 7B-1110)). "We review a trial court's adjudication under N.C.G.S. § 7B-1109 'to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law.' The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)). "The trial court's assessment of a juvenile's best interest at the dispositional stage is reviewed only for abuse of discretion." *In re Z.L.W.*, 372 N.C. 432, 435, 831 S.E.2d 62, 64 (2019) (citing *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016)).

We now turn to respondent-father's arguments. First, regarding grounds for termination, respondent-father argues the trial court's findings of fact are insufficient to support its conclusion that grounds exist to terminate his parental rights under N.C.G.S. § 7B-1111(a)(1) and (2).

The trial court may terminate a parent's parental rights if at least one of the statutory grounds enumerated in N.C.G.S. § 7B-1111(a) exists. Specifically, under N.C.G.S. § 7B-1111(a)(1) (2019), parental rights may be terminated if the trial court

finds the parent has neglected his or her child such that the child is a "neglected juvenile" within the meaning of section 7B-101 of the North Carolina General Statutes. N.C.G.S. § 7B-1111(a)(1) (2019). A neglected juvenile is defined, in pertinent part, as a juvenile "whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; . . . or who lives in an environment injurious to the juvenile's welfare . . . ." N.C.G.S. § 7B-101(15) (2019). When it cannot be shown that the parent is neglecting his or her child at the time of the termination hearing because "the child has been separated from the parent for a long period of time, there must be a showing of past neglect and a likelihood of future neglect by the parent." *In re D.L.W.*, 368 N.C. at 843, 788 S.E.2d at 167 (2016) (citing *In re Ballard*, 311 N.C. 708, 713–15, 319 S.E.2d 227, 231–32 (1984)). When determining whether future neglect is likely, the trial court must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing. *In re Ballard*, 311 N.C. at 715, 319 S.E.2d at 232.

Under N.C.G.S. § 7B-1111(a)(2) (2019), the trial court may terminate parental rights if a parent "has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2) (2017). Termination under this ground requires the trial court to perform a two-step analysis where it must determine by clear, cogent, and convincing evidence whether (1) a child

has been willfully left by the parent in foster care or placement outside the home for over twelve months, and (2) the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child. *See In re O.C.*, 171 N.C. App. 457, 464–65, 615 S.E.2d 391, 396, *disc. review denied*, 360 N.C. 64, 623 S.E.2d 587 (2005).

Respondent-father largely asserts the same reasoning as to why the trial court erred in terminating his parental rights on both grounds. As for N.C.G.S. § 7B-1111(a)(1) (the neglect ground), respondent father asserts that the evidence does not support a finding that there is a strong possibility of future neglect. He also contends that the trial court failed to analyze evidence of changed conditions; respondent-father asserts that the trial court did not base its decision on any evidence after the October 2018 permanency planning hearing. Respondent-father cites the trial court's finding that he had one three-month period of sobriety during the twenty-two months that the juveniles were outside the home. Because the trial court did not provide dates for that three-month period, respondent-father asserts that the three months could have occurred after the October 2018 permanency planning hearing and before the termination hearing, showing changed circumstances that would weigh against terminating his parental rights. Thus, because respondent-father contends the trial court did not consider more recent circumstances leading up to the termination hearing, respondent-father argues that terminating his rights under the neglect ground was improper.

As for N.C.G.S. § 7B-1111(a)(2) (willfully leaving the child outside the home and failure to make reasonable progress), respondent-father asserts that his actions do not demonstrate a willful intent to leave the children outside the home. Respondent-father disagrees with the trial court's conclusion that he had not made reasonable progress to correct the conditions that led to the juveniles' removal. Because he need not make perfect progress in his case plan, respondent-father essentially argues that his progress was good enough to avoid having his parental rights terminated.

At the outset, however, we address respondent-father's argument that parts of the above findings are not actually findings of fact but are instead conclusions of law. Respondent-father specifically argues those portions of findings of fact 15 and 16 that find "[t]he juveniles are neglected juveniles within the meaning of 7B-101(15) and such neglect . . . continues as of today's hearing[,]" his "issues will continue to exist in the foreseeable future such that the juveniles will be unable to safely return to [his] home[,]" and "[he] has willfully left the juveniles in foster care for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstance [has] been made in correcting the conditions which led to the juveniles to be placed out of the home[,]" are conclusions of law rather than factual findings given that they involve the exercise of judgment. This Court recently addressed a similar argument in *In re N.D.A.*, 373 N.C. 71, 76–77, 833 S.E.2d 768,

772–73 (N.C. 2019). In that case, this Court distinguished between factual findings, ultimate findings of fact, and conclusions of law:

> As the Supreme Court of the United States has stated, an "ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact" and should "be distinguished from the findings of primary, evidentiary, or circumstantial facts." *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, 491, 57 S. Ct. 569, 574, 81 L. Ed. 755, 762 (1937); *see also In re Anderson*, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002) (stating that "[u]ltimate facts are the final resulting effect reached by processes of logical reasoning from the evidentiary facts" (citation omitted)). Regardless of whether statements like those contained in [the contested findings here] are classified as findings of ultimate facts or conclusions of law, that classification decision does not alter the fact that the trial court's determination concerning the extent to which a parent's parental rights in a child are subject to termination on the basis of a particular ground must have sufficient support in the trial court's factual findings. *See In re D.M.O.*, 250 N.C. App. 570, 573, 794 S.E.2d 858, 861 (2016) (stating that "a trial court must make adequate evidentiary findings to support its ultimate finding of willful intent" (citation omitted)).

*Id*. Accordingly, this Court reviews the termination order to determine whether the trial court made sufficient factual findings to support its ultimate findings of fact and conclusions of law, regardless of how they are classified in the order.

Upon review we reject respondent-father's arguments and conclude that clear, cogent, and convincing evidence supports the findings of fact underlying the trial court's decision to terminate his parental rights. Looking first at the neglect ground, it is evident that, contrary to respondent's argument, the trial court considered

evidence after the October 2018 permanency planning hearing. Specifically, the trial court found that respondent-father continues to use alcohol, which is supported by respondent-father being admitted to an alcohol rehabilitation program on 16 December 2018, after the October 2018 permanency planning hearing. This fact also undermines respondent-father's argument that his three-month period of sobriety may have occurred after the October 2018 permanency planning hearing and that the trial court did not consider any evidence leading up to the termination hearing. Notably, respondent-father was not released from the program until 7 January 2019, just over one month before the termination hearing. Based on the record evidence, the only three-month period of respondent-father's sobriety would have occurred between June 2018, after he passed two sobriety tests to regain visitation privileges he had lost, and August 2018, when respondent-father failed a breathalyzer despite completing his required SAIOP hours just a few days later.

Moreover, the trial court's findings clearly show that it evaluated respondent-father's history of alcohol abuse and his behavior over the entire twenty-two-month period during which the juveniles were outside the house, which showed a repeated pattern of returning to alcohol. Respondent-father failed and evaded numerous breathalyzer tests, admitted to relapsing several times during his outpatient treatment, and, notably, failed breathalyzer tests right before and after completing 90 hours of SAIOP. Given that respondent-father only maintained three months of sobriety in the twenty-two months during which the juveniles were living outside of

the house, and given that there is evidence of respondent-father's alcohol abuse preceding the termination, it appears the trial court appropriately weighed all the evidence to conclude that there was a probability of repetition of neglect. *See Ballard*, 311 N.C. at 715–16, 319 S.E.2d at 232.

Because we conclude that the trial court properly terminated respondent-father's rights based on neglect, we need not determine whether termination is proper under N.C.G.S. § 7B-1111(a)(2) based on respondent-father willfully leaving the children outside the home and his failure to make reasonable progress. *See* N.C.G.S. § 7B-1111(a) (providing that the trial court may terminate a parent's rights if any ground for termination exists). Nonetheless, we note that N.C.G.S. § 7B-1111(a)(2) also supports the trial court's termination of respondent-father's parental rights based on the same reasoning that supported a termination based on neglect. When viewing the evidence as a whole, it appears that the trial court correctly concluded that respondent-father's three-month period of sobriety was outweighed by his continuous pattern of relapse, which occurred during the months he attended SAIOP.[2] As such, the trial court properly terminated respondent-father's rights on both statutorily alleged grounds.

---

[2] Respondent-father argues in part that although domestic violence was another reason why the children were removed from the home, respondent-father could not complete domestic violence counseling until after he had completed substance abuse treatment. Therefore, respondent-father argues that his failure to make progress in this area should not be held against him. Even assuming this to be true, the trial court's decision to terminate respondent-father's rights is amply supported by evidence of respondent's continual failure

We now turn to the trial court's best interests determination. Respondents both contend that the trial court erred in determining that termination was in the juveniles' best interests. At the dispositional stage the trial court must "determine whether terminating the parent's rights is in the juvenile's best interest" based on the following criteria:

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C.G.S. § 7B-1110(a) (2019). The trial court shall consider all of the factors and make written findings regarding those that are relevant. *Id.*

In her brief to this Court, respondent-mother does not contest any of the trial court's findings of fact; thus, they are binding on her appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citing *Schloss v. Jamison*, 258 N.C. 271, 275, 128 S.E.2d 590, 593 (1962)). Respondent-mother recognizes the well-established

---

to address his alcohol abuse.

abuse of discretion standard of review for evaluating a trial court's determination of a juvenile's best interests. Nonetheless, respondent-mother asserts that appellate courts should utilize a de novo standard of review on appeal and that under such review, it would be clear that terminating her parental rights is not in the children's best interests.

Having considered respondent-mother's arguments, we reaffirm our application of an abuse of discretion standard of review to the trial court's determination of "whether terminating the parent's rights is in the juvenile's best interest" under N.C.G.S. § 7B-1110(a). *See, e.g.*, *Z.L.W.*, 372 N.C. at 435, 831 S.E.2d at 64; *In re L.M.T.*, 367 N.C. 165, 171, 752 S.E.2d 453, 457 (2013). Under this standard, we defer to the trial court's decision unless it is "manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998). Despite respondent-mother's arguments to the contrary, we reiterate that the trial court, which is involved in the case from the beginning and hears the evidence, is in the best position to assess and weigh the evidence, find the facts, and reach conclusions based thereon.

As for the best interests determination itself, both respondents set forth similar arguments as to why they believe the trial court erred in concluding that termination would be in the children's best interests. Respondents both assert that the trial court did not give enough weight to the children's bond with them, nor did

the court take into account the children's preferences. Respondents also assert that the trial court should have considered guardianship as an option so the parents could have the chance to regain custody of the children in the future. Finally, respondent-father argues that the court did not properly consider whether termination would aid in accomplishing a permanent placement for the children or any other relevant considerations.

Applying the proper standard of review here, we conclude that the trial court did not abuse its discretion when determining that terminating respondents' rights was in the juveniles' best interests. This Court recently addressed arguments similar to those that respondents assert in *In re Z.L.W.* In that case, this Court recognized that the trial court made findings concerning the strong bond between the juveniles and the respondent-parent, but explained that "the bond between parent and child is just one of the factors to be considered under N.C.G.S. § 7B-1110(a), and the trial court is permitted to give greater weight to other factors." *In re Z.L.W.*, 372 N.C. at 437, 831 S.E.2d at 66. Based on the trial court's consideration of the other factors, and given the respondent's lack of progress in his case plan, this Court concluded that "the trial court's determination that other factors outweighed [the] respondent's strong bond with [the juveniles] was not manifestly unsupported by reason." *Id.* at 438, 832 S.E.2d at 66. Furthermore, this Court rejected the respondent's argument that the trial court should have considered dispositional alternatives, such as granting guardianship or custody to the foster family. This Court explained that,

> [w]hile the stated policy of the Juvenile Code is to prevent "the unnecessary or inappropriate separation of juveniles from their parents," N.C.G.S. § 7B-100(4) (2017), we note that "the best interests of the juvenile are of paramount consideration by the court and . . . when it is not in the juvenile's best interest to be returned home, the juvenile will be placed in a *safe, permanent home within a reasonable amount of time*," *id*. § 7B-100(5) (2017) (emphasis added); *see also In re Montgomery*, 311 N.C. at 109, 316 S.E.2d at 251 (emphasizing that "the fundamental principle underlying North Carolina's approach to controversies involving child neglect and custody [is] that the best interest of the child is the polar star").

*Id*. Thus, in *Z.L.W.*, we held the trial court did not abuse its discretion in determining termination was in the best interests of the juveniles. *Id*.

Just as in *In re Z.L.W.*, the trial court's findings in this case show that it considered the dispositional factors in N.C.G.S. § 7B-1110(a) and performed a reasoned analysis weighing those factors. In doing so, the trial court recognized the children's bond with respondents, but weighed that bond against its findings that adoption was previously ordered as the primary permanent plan; that termination was necessary to achieve the primary permanent plan; that the children have been placed in their potential adoptive home with their maternal grandparents since April 2017; that the potential adoptive home is a loving and stable home where the children's needs are being met; that the children have a very good relationship with the maternal grandparents and are well bonded; and that it is very likely the children will be adopted. Based on its weighing of the factors, the trial court ultimately determined the best interests of the children would be served by terminating

respondents' parental rights despite the children's bond with them. Because the trial court made sufficient dispositional findings and performed the proper analysis of the dispositional factors, we are satisfied the trial court's best interests determination was not manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision.

Because we conclude the trial court did not err in its decision, we affirm the trial court's termination of respondents' parental rights to Zane and Ethan.

AFFIRMED.