IN THE SUPREME COURT OF NORTH CAROLINA

No. 401A19

Filed 25 September 2020

IN THE MATTER OF: J.D.C.H., J.L.C.H.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 27 June 2019 by Judge Wayne S. Boyette in District Court, Nash County. This matter was calendared for argument in the Supreme Court on 29 July 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief for petitioner-appellee mother.*

*No brief for appellee Guardian ad Litem.*

*Richard Croutharmel for respondent-appellant father.*

HUDSON, Justice.

Respondent appeals from the trial court's order terminating his parental rights to J.D.C.H. (Jed) and J.L.C.H. (Joel)[1] on the ground of willful abandonment. We affirm.

I.    Factual Background and Procedural History

Petitioner and respondent were involved in an on-again, off-again relationship from 2010 through 2014 but never married. Joel was born in July 2011, and Jed was

---

[1] Pseudonyms are used to protect the identity of the juveniles and for ease of reading.

born in May 2015. The parents ended their romantic involvement in 2014, shortly after petitioner found out she was pregnant with Jed. Respondent is also the father of three other children with different women.

Respondent was initially involved in helping provide care for Joel after his birth. He regularly called to check on Joel and was a "good dad" when he was around. After Jed was born, however, respondent's involvement became more sporadic. In the year after Jed's birth, respondent saw the children on only a few occasions. He continued to call to check on the children, but his contact became progressively less frequent, and he last spoke with the children in September 2016. Jed never had an overnight visit with respondent.

In July 2016, respondent had a four-hour unsupervised visit with the children at their paternal grandmother's home. At that visit, petitioner and respondent agreed that respondent could see the children every other weekend if he would pay petitioner $200.00 per month in child support. However, respondent never paid any child support and did not ask to see the children after that visit. At the time of the termination hearing on 30 May 2019, respondent had not seen the children since the July 2016 visit.

Petitioner met her now husband, Mr. H., and they married in December 2016. In March 2017, petitioner contacted respondent about changing the children's last names to also include that of Mr. H., and respondent consented to the name change. Respondent signed the paperwork but did not show up at the courthouse to bring his

identification card, despite petitioner telling respondent that she would bring Joel to the courthouse with her so that petitioner could visit with him. Petitioner nonetheless was able to effectuate the name changes despite respondent's absence.

Respondent was incarcerated from October 2018 to 14 December 2018. The day he was released, respondent called petitioner and asked to see the children and stated that he wanted to resume his relationship with them. Petitioner denied respondent's request to see the children.

On 31 December 2018, petitioner filed petitions to terminate respondent's parental rights in both children, alleging the grounds of willful failure to pay a reasonable portion of the cost of the children's care and willful abandonment. N.C.G.S. § 7B-1111(a)(3), (7) (2019). Respondent filed a pro se, handwritten response to the petitions on 27 February 2019, and his attorney filed an answer to the petitions on 16 April 2019. At the 30 May 2019 termination hearing, the cases were consolidated for hearing and petitioner voluntarily dismissed the ground of willful failure to pay a reasonable portion of the cost of the children's care. On 27 June 2019, the trial court entered an order concluding that grounds existed to terminate respondent's parental rights based on willful abandonment and that termination was in the children's best interests. Accordingly, the trial court terminated respondent's parental rights. Respondent appealed.

## II.   Analysis

Our Juvenile Code provides for a two-stage process for terminating parental rights. N.C.G.S. §§ 7B-1109, -1110 (2019). At the adjudicatory stage, the petitioner bears the burden of proving by "clear, cogent, and convincing evidence" the existence of one or more grounds for termination under N.C.G.S. § 7B-1111(a). N.C.G.S. § 7B-1109(f). "If [the trial court] determines that one or more grounds listed in section 7B-1111 are present, the court proceeds to the dispositional stage, at which the court must consider whether it is in the best interests of the juvenile to terminate parental rights." *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016) (citing *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614–15 (1997); N.C.G.S. § 7B-1110).

"We review a trial court's adjudication under N.C.G.S. § 7B-1109 'to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law.' " *In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)). "Unchallenged findings are deemed to be supported by the evidence and are 'binding on appeal.' " *In re K.N.K.*, 374 N.C. 50, 53, 839 S.E.2d 735, 738 (2020) (quoting *In re Z.L.W.*, 372 N.C. 432, 437, 831 S.E.2d 62, 65 (2019)). "Moreover, we review only those [challenged] findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58–59 (2019) (citation omitted). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. at 19, 832 S.E.2d at 695 (citation omitted).

Respondent contends that the trial court erred by terminating his parental rights on the ground of willful abandonment. Specifically, he challenges several of the trial court's findings of fact and argues that the findings and record evidence do not support the conclusion that he willfully abandoned the children. We disagree.

A trial court may terminate a parent's parental rights when "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion." N.C.G.S. § 7B-1111(a)(7). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. at 251, 485 S.E.2d at 617 (citation omitted). "[I]f a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wil[l]fully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962) (citation omitted). "The willfulness of a parent's actions is a question of fact for the trial court." *In re K.N.K.*, 374 N.C. at 53, 839 S.E.2d at 738 (citing *Pratt*, 257 N.C. at 501, 126 S.E.2d at 608). "[A]lthough the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re N.D.A.*, 373 N.C. 71, 77, 833 S.E.2d 768, 773 (2019) (citation omitted).

Here, the determinative six-month period is from 30 June 2018 to 31 December 2018. In support of its conclusion that grounds existed to terminate respondent's parental rights based on willful abandonment, the trial court made the following relevant findings of fact:

> 22. The last face to face contact and visit the Respondent had with either Juvenile was on July 23, 2016, and lasted approximately four (4) hours. The Respondent has not been in the presence of either Juvenile for over two and one-half (2½) years and has not made any serious or sincere effort to participate in either Juvenile's life during those two and one-half (2½) years.
>
> 23. The last communication of any kind the Respondent had with the Petitioner to inquire about the welfare of the Juveniles was on September 22, 2016, with the exception of one text, Facebook message, or email request to visit in December of 2018, which was rebuffed by the Petitioner.
>
> 24. Since September 22, 2016, the Respondent has failed to communicate with the Juveniles, with the exception of the abovesaid request to visit in December of 2018, has not sent any letters to the Juveniles, has failed to call the Juveniles, has failed to provide any emotional, material or financial support to the Juveniles and has failed in any manner to perform his duties as a parent to the Juveniles. The Court does not consider any attempts by the Respondent's mother inquiring as to the welfare of the Juveniles as attributable to the Respondent himself for the purposes of this action.
>
> 25. The Respondent has failed to provide any consistent financial or material support for the use and benefit of the Juveniles since their birth.
>
> 26. The Respondent, as a natural father of both Juveniles, has willfully abandoned the Juveniles for at least six (6) consecutive months immediately preceding the

filing of these Petitions for Termination of Parental Rights pursuant to the provisions of [N.C.G.S.] § 7B-1111(7).

27. The Respondent contends that his failure to visit with both Juveniles, to have any contact with them, or to attempt to have any contact with them was due to his lack of finances, lack of transportation, lack of his maturity level, and resistance of the Petitioner. The [trial c]ourt finds, however, by clear, cogent and convincing evidence that the actions and omissions of the Respondent constitute conduct by him manifesting a willful intent to forego all parental duties and obligations and to relinquish all his parental claims to both Juveniles.

28. The Respondent has not been prohibited from contacting the Juveniles due to sickness, incarceration, or any other valid reason.

29. The Respondent's actions and/or omissions and failures to act for the two and one-half (2½) years prior to the filing of the Petitions, are wholly inconsistent with his stated desire to maintain custody or a relationship with the Juveniles.

30. The Respondent's actions and/or omissions and failures to act for the two and one-half (2½) years prior to the filing of the Petitions, constitute willful neglect and a refusal to perform the natural and legal obligations of parental care and support.

31. For the two and one-half (2½) years prior to the filing of the Petitions, the Respondent withheld from the Juveniles his presence, his love, and his care; and further, willfully neglected to provide support and maintenance to the Petitioner for the use and benefit of the Juveniles.

32. The Respondent testified he loved both Juveniles. While the [trial c]ourt does not doubt the Respondent's love for the Juveniles, the [trial c]ourt finds that the welfare and best interest of the Juveniles are paramount to the parental love felt by the Respondent and that because of

the Respondent's demonstrated neglect of his parental duties and obligations the Respondents' feelings of parental love must yield to the welfare and best interest of the Juveniles.

33.     The [trial c]ourt specifically finds that from July of 2016 until the filing o[f] the Petition the Respondent willfully abandoned both Juveniles and withdrew and withheld from them his support and love, and failed to take reasonable efforts to force contact with the Juveniles.

34.     The Respondent failed to take legal action, whether with an attorney or on his own, to force contact with the Juveniles. The Respondent never attempted to force contact with the Juveniles in any manner, even though the Respondent earned a decent wage working at various places of employment where he was paid between $300.00 and $450.00 per week "in cash" and supported other children by other women. Further, the Respondent testified that he opened a checking account and purchased a camper for the mother of another of his biological children during a time when he contributed no financial support to the Petitioner for the use and benefit of the Juveniles.

35.     The Respondent demonstrated through his testimony that, although he had the ability and intelligence to understand his parental obligations to the Juveniles, he willfully failed to fulfill those parental obligations, stating "I wasn't being responsible."

36.     Even after he was served with the Petitions in these cases, the Respondent failed to demonstrate through his actions, other than filing the *pro se* response, a desire to support the Juveniles financially and emotionally, and failed to take any action to force contact with them.

37.     The Petitioner testified that the main reason for initiating the Termination of Parental Rights was that the Petitioner did not want the Respondent to obtain custody of the minor children in the event of her death.

38.    The paternal grandmother testified that she attempted to contact the Petitioner regarding the welfare of the children in the 2 ½ years prior to filing the Petition and the paternal grandmother further testified that she had a contact telephone number during this time and that she was certain that the Respondent Father also had access and knowledge of the Petitioner's telephone number during this time period.

39.    Termination of the Respondent's parental rights is in the best interest and welfare of both Juveniles.

40.    The best interests of the Juveniles will be served by granting the Petitioner the relief requested in her Petitions to Terminate Parental Rights filed in 18 JT 64 and 18 JT 65.

41.    In making its decision, the [trial c]ourt has considered both the conduct of the Respondent in the six (6) months immediately preceding the filing of the Petitions in this matter and the conduct of the Respondent from the date of the filing of the Petitions to the date of the hearing.

*A. Challenged Findings of Fact*

On appeal, respondent challenges several of the trial court's findings of fact as unsupported or irrelevant. He first challenges as unsupported by the evidence the last sentence of finding of fact 22, which states that he "has not made any serious or sincere effort to participate in either Juvenile's life" over the past two and one-half years. Respondent argues that his December 2018 phone call to petitioner asking to visit with the children was "a sincere effort at reestablishing his relationship with his children[,]" which was made during the relevant period Although respondent's request to see the children when he phoned petitioner may have been sincere, we find

no error in the trial court's finding that this one unsuccessful attempt to set up visitation in over two years did not demonstrate a "serious or sincere effort" by respondent to reestablish his relationship with the children.

Respondent next challenges finding of fact 23. First, he contends that the finding mischaracterizes the nature of his contact with petitioner in December 2018. Respondent argues that both he and petitioner testified that the contact was made by telephone. We agree that the evidence showed respondent's contact with petitioner in December 2018 was by telephone. Therefore, to the extent the finding of fact indicates that the contact was through text, email, or social media, that portion of the finding is unsupported by the evidence, and we will disregard that portion. *See In re B.C.B.*, 374 N.C. 32, 35, 839 S.E.2d 748, 751 (2020) (stating that the findings of fact must be supported by clear, cogent, and convincing evidence). However, any inaccuracy as to the means of contact has no bearing on the substance of this finding—that is, that respondent contacted petitioner only once during the determinative period. Respondent also argues that finding of fact 23 fails to acknowledge his second attempt to contact petitioner through social media in January 2019. However, because this contact fell outside the relevant period for adjudicating the ground of willful abandonment, any possible error in the trial court's failure to address this point in its findings is harmless. *See In re K.N.K.*, 374 N.C. at 56, 839 S.E.2d at 740 ("[A]ny error in these findings is harmless and had no impact

on the court's adjudication because they occurred . . . after the petition was filed and well outside the determinative time period.").

Respondent next contends finding of fact 26, which states that respondent willfully abandoned the children within the meaning of N.C.G.S. § 7B-1111(a)(7), is actually a conclusion of law because it requires the application of legal principles and "decides ultimate issues in the case." We agree that finding of fact 26 is not an evidentiary finding of fact, but we determine that it is an ultimate finding. "[A]n 'ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact' and should 'be distinguished from the findings of primary, evidentiary, or circumstantial facts.' " *In re N.D.A.*, 373 N.C. at 76, 833 S.E.2d at 772–73 (quoting *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, 491, 81 L. Ed. 755, 762 (1937)); *see also In re Anderson*, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002) ("Ultimate facts are the final resulting effect reached by processes of logical reasoning from the evidentiary facts." (citation omitted)). Regardless of how this finding is classified, "that classification decision does not alter the fact that the trial court's determination concerning the extent to which a parent's parental rights in a child are subject to termination on the basis of a particular ground must have sufficient support in the trial court's factual findings." *In re N.D.A.*, 373 N.C. at 76–77, 833 S.E.2d at 773. As a result, we address respondent's challenge in our discussion regarding whether the trial court erred by concluding that respondent's parental rights were subject to termination based on willful abandonment.

Respondent next "denies" findings of fact 27, 30, 31, and 33. His challenge to these findings rests solely on his one phone call to petitioner two weeks before the petitions were filed. Respondent concedes that had petitioner "filed her TPR petitions before that telephone call, [he] would have no argument here." He argues, however, that because that one telephone call "came first," was "unprompted," and showed his "attempt to reestablish his relationship with his children," he did not "abandon[ ] *all* parental duties and claims to his children" nor "willfully neglect[ ] to provide support and maintenance to Petitioner." (Emphasis in original.) We are not persuaded by this argument. One attempted contact during the six-month determinative period does not preclude a finding that respondent withheld his love and affection from the children and willfully abandoned them. *See Pratt*, 257 N.C. at 502–03, 126 S.E.2d at 609 (rejecting the respondent-father's argument that his one visit during the determinative six-month period refuted a finding of willful abandonment); *see also In re B.S.O.*, 234 N.C. App. 706, 713, 760 S.E.2d 59, 65 (2014) (affirming a termination order based on willful abandonment where the father made only one phone call to the children and their mother during the determinative six-month period).

Respondent next "denies as irrelevant" finding of fact 36 on the basis that it refers to his conduct outside of the determinative six-month period. Respondent argues that a "trial court has no authority to consider a parent's post-TPR petition actions when determining whether to terminate parental rights under [N.C.G.S.] § 7B-1111(a)(7)." We do not agree. The trial court's finding regarding respondent's

actions after the termination petition was filed is not "irrelevant" because the trial court "may consider a parent's conduct outside the six-month window *in evaluating a parent's credibility and intentions." In re C.B.C.*, 373 N.C. at 22–23, 832 S.E.2d at 697 (emphasis in original) (quoting *In re D.M.O.*, 250 N.C. App. 570, 573, 794 S.E.2d 858, 861 (2016)). Thus, the trial court could consider respondent's conduct after the filing of the termination petition to determine the sincerity and intent of his conduct during the relevant six-month period. Respondent has not challenged the evidentiary support for this finding and it is thus binding on appeal.

Respondent similarly "denies as irrelevant" the portion of finding of fact 41 that indicates the trial court considered both his conduct during the determinative six-month period and his conduct after the filing of the termination petition in reaching its decision. For the reasons we rejected respondent's challenge to finding of fact 36, we also reject this argument.

Finally, respondent challenges findings of fact 32, 39, and 40. Finding of fact 32 states that "[w]hile the [trial c]ourt does not doubt the Respondent's love for the Juveniles, . . . [Respondent's] feelings of parental love must yield to the welfare and best interest of the Juveniles." In findings of fact 39 and 40, the trial court found that termination of respondent's parental rights was in the children's best interests. Respondent argues that the "trial court cannot consider best interests until Petitioner first establishes at least one . . . ground [for termination], which she failed to do." However, because the trial court found that petitioner proved by clear, cogent, and

convincing evidence that at least one ground to terminate respondent's parental rights existed—that respondent willfully abandoned the children—the trial court was therefore required to make dispositional findings about whether termination was in the children's best interests. *In re D.L.W.*, 368 N.C. at 842, 788 S.E.2d at 167; N.C.G.S. § 7B-1110. In any event, these findings were not necessary to support the trial court's adjudication of the ground of willful abandonment, and since respondent does not challenge the trial court's dispositional determination, we need not address them. *See In re T.N.H.*, 372 N.C. at 407, 831 S.E.2d at 58–59 (stating that in reviewing a trial court's adjudication of grounds for termination, we review only those findings necessary to support the trial court's conclusion that grounds existed).

*B. Grounds to Terminate Parental Rights*

Respondent next contends that the evidence and the trial court's findings of fact do not support its conclusion that he willfully abandoned the children. Respondent acknowledges his admission at the hearing "that he had not been a good father before [the] 14 December 2018 telephone call to Petitioner" but argues that his actions did not amount to willful abandonment as defined in N.C.G.S. § 7B-1111(a)(7). We disagree.

The trial court's findings of fact demonstrate that except for respondent's one unsuccessful phone call requesting to see the children, he made no other attempt to contact petitioner or to reestablish a relationship with the children during the six-month determinative period or for nearly two years preceding that period. The trial

court found that respondent did not send any letters to the children, did not call the children, and did not provide any emotional, material, or financial support to the children. The trial court also found that respondent "demonstrated through his testimony that, although he had the ability and intelligence to understand his parental obligations to the [children], he willfully failed to fulfill those parental obligations, stating 'I wasn't being responsible.'"

Respondent acknowledges that he had no other contact with petitioner during the relevant six-month period but claims that his single phone call is sufficient to demonstrate that he did not intend to forgo all parental duties and did not willfully abandon the children. For a parent's actions to constitute willful abandonment, however, "it is not necessary that a parent absent himself continuously from the child for the specified six months, nor even that he cease to feel any concern for its interest." *Pratt*, 257 N.C. at 503, 126 S.E.2d at 609. "[I]f a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wil[l]fully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Id*. at 501, 126 S.E.2d at 608 (citation omitted).

The trial court's findings of fact demonstrate that respondent willfully withheld his love, care, and affection from the children and that his conduct during the determinative six-month period constituted willful abandonment. Respondent's one unsuccessful request to visit the children during the six-months immediately preceding the filing of the termination petition does not undermine the trial court's

ultimate finding and conclusion that respondent willfully abandoned the children. *See Pratt*, 257 N.C. at 502, 126 S.E.2d at 609; *see also In re B.S.O.*, 234 N.C. App. at 713, 760 S.E.2d at 65 ("In light of respondent-father's single phone call to respondent-mother and his children during the six months immediately preceding [the filing of the termination petition], the [trial] court did not err in finding that he willfully abandoned the children."); *In re Apa*, 59 N.C. App. 322, 324, 296 S.E.2d 811, 813 (1982) (affirming termination where "except for an abandoned attempt to negotiate visitation and support, [the respondent-father] 'made no other significant attempts to establish a relationship with [the child] or obtain rights of visitation with [the child]' "). Accordingly, we hold the trial court did not err by terminating respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(7).

## III.  Conclusion

Respondent challenges several of the trial court's findings of fact and its conclusion of law that respondent willfully abandoned Joel and Jed. Except for a portion of finding of fact 23, we conclude that the trial court's findings of fact are supported by clear, cogent, and convincing evidence, and we further hold that the findings of fact support the trial court's conclusion that respondent willfully abandoned the children. Respondent did not challenge the trial court's dispositional determination that termination was in the children's best interests. Therefore, we affirm the trial court's order terminating respondent's parental rights.

AFFIRMED.